**Jim GEHBAUER, Greg Petro, and Timothy G. Jones, Appellants–Plaintiffs,**

v.

**EMAS, INC., Appellee–Defendant.**

No. 49A05–9607–CV–302.

Court of Appeals of Indiana.

May 30, 1997.

Kevin C. Tyra, Indianapolis, for Appellants–Plaintiffs.

Richard M. Malad, Cohen & Malad, Indianapolis, for Appellee–Defendant.

## OPINION

SHARPNACK, Chief Judge.

Jim Gehbauer, Greg Petro, and Timothy Jones (collectively "the Appellants") bring this interlocutory appeal from the trial court's denial of their motion for summary judgment in favor of the defendant-appellee, Emas, Inc. ("Emas"). The Appellants are seeking to recover unpaid wages from Emas, their former employer. The sole issue raised for our review is whether the trial court erred in denying summary judgment. We affirm.

The facts most favorable to Emas, the nonmovant, follow. Since January 21, 1980, Emas has contracted with nursing homes and hospitals to provide both emergency and nonemergency transportation. Under its contracts, Emas is generally required to respond to nonemergency calls within forty-five minutes and emergency calls within two minutes.

Beginning in 1992, Emas conducted an operation out of the firehouse in Mooresville, Indiana. During this time, Emas employed the Appellants as emergency medical technicians and paramedics on ambulance crews. Emas paid the Appellants for seven and a half hours of work on each eight hour shift; Emas deducted a half hour for "meal breaks." Record, p. 32. Because the ambulance crews were always on call during their shift, there was no scheduled time for a meal break. On some days, the Appellants were interrupted during their meal breaks and did not have time to eat. By June of 1994, each of the Appellants had stopped working for Emas.

On December 21, 1994, Gehbauer sent a letter to Emas demanding compensation for unpaid wages. Soon thereafter, Petro and Jones sent similar letters. When Emas refused to pay those wages, the Appellants filed a complaint for damages against Emas, which was later amended on March 17, 1995.

In the amended complaint, the Appellants alleged that Emas owed back wages which were unlawfully withheld from their paychecks. Essentially, the Appellants contended that Emas should have paid them for the full eight hour shift rather than deduct a half hour for meal breaks. In addition, the Appellants sought liquidated damages, attorney's fees, and costs.

On March 22, 1996, the Appellants filed their motion for summary judgment, alleging that there were no issues of material fact regarding their entitlement to the unpaid wages. On November 15, 1996, the trial court held a hearing on the motion. On June 14, 1996, the trial court denied the Appellants' motion and stated that "there exist material issues of fact which preclude summary judgment." Record, p. 151. The Appellants now appeal the denial of their motion for summary judgment.

The sole issue for our review is whether the trial court erred in denying summary judgment. When we review a trial court's entry of summary judgment, we are bound by the same standard as the trial court. *Ayres v. Indian Heights Volunteer Fire Dep't, Inc.*, 493 N.E.2d 1229, 1234 (Ind. 1986); *see* Ind. Trial Rule 56. Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. *Cowe v. Forum Group, Inc.*, 575 N.E.2d 630, 633 (Ind.1991). "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue." *Scott v. Bodor, Inc.*, 571 N.E.2d 313, 318 (Ind.Ct.App. 1991).

The Appellants argue that they are entitled to the unpaid wages as a matter of law. The Appellants are seeking to recover their unpaid wages as provided by Ind.Code §§ 22–2–4–4, 22–2–5–2.[1] They assert that

---

1. I.C. § 22–2–4–4 governs the penalty for the nonpayment of wages and provides:

   "Every corporation, limited liability company, company, association, firm, or person who shall fail for ten (10) days after demand of payment has been made to pay employees for

   their labor, in conformity with the provisions of this chapter, shall be liable to such employee for the full value of his labor, to which shall be added a penalty of one dollar ($1) for each succeeding day, not exceeding double the amount of wages due, and a reasonable attor-

"the payments for wages for employees who are on call during so called 'meal breaks' is apparently a case of first impression in Indiana." Appellant's brief, p. 6. As a result, the Appellants have not cited any Indiana common law to support their argument, but instead have relied primarily on federal cases.

First, the Appellants cite *Armour & Co. v. Wantock*, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944), *reh'g denied*, 323 U.S. 818, 65 S.Ct. 427, 89 L.Ed. 649. In *Amour*, a group of firefighters sought to recover unpaid wages from their employer, a soap box factory, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* The firefighters worked a daily shift from 8:00 a.m. to 5:00 p.m., during which they maintained the factory's firefighting equipment. After their shift, the firefighters would remain on call in a firehouse provided by the factory. While on call, they were required to respond to any emergencies and repair faulty fire apparatus. The time spent on this work amounted to less than a half hour a week. Although the company compensated the firefighters for this work, it refused to compensate them for the rest of the time spent on call.

The United States Supreme Court determined that under the FLSA, the compensability for the on call time focused on the questions of "whether the time is spent predominantly for the employer's benefit" and whether the employee can engage in personal pursuits. *Id.* at 133–134, 65 S.Ct. at 168–169. The Supreme Court stated that these questions must be determined "upon all the circumstances of the case." *Id.* at 133, 65 S.Ct. at 168. After reviewing the facts, the Supreme Court held that because the firefighters' on call time was "working time,"

they were entitled to the unpaid wages. *Id.* at 134, 65 S.Ct. at 169.

Next, the Appellants rely upon *Kelly v. Ballard*, 298 F.Supp. 1301 (S.D.Cal.1969). In *Kelly*, a group of ambulance drivers and attendants filed an action to recover minimum and overtime wages under the FLSA. Specifically, the plaintiffs sought compensation for the time they spent eating and sleeping while on call. During this time, they merely waited to respond to emergencies. As such, they did not have scheduled times for eating and sleeping.

The district court determined that the compensability of the meal and sleep times depended upon the particular facts of the case. *Id.* at 1307. The court stated that "[w]hether in a concrete case such time falls within or without the [FLSA] is a question of fact to be resolved by appropriate findings of the trial court." *Id.* at 1308 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 136–137, 65 S.Ct. 161, 163, 89 L.Ed. 124 (1944)). After considering the facts, the trial court held that because the plaintiffs' time spent on call was for the benefit of their employer, they were entitled to the unpaid wages. *Id.*

Lastly, the Appellants cite a more recent case, *Shamblin v. City of Colchester*, 793 F.Supp. 834 (C.D.Ill.1992). In *Shamblin*, a police officer brought an action to recover unpaid wages under the FLSA and Illinois wage statutes. The plaintiff sought compensation for the time he spent on call while away from the police station. Specifically, the plaintiff alleged that his on call time should be considered working time.

The plaintiff moved for summary judgment, which was denied. The district court reasoned that whether the plaintiff's on call time fell within the FLSA was a question of

ney's fee, to be recovered in a civil action and collectable without relief."

In addition, I.C. § 22–2–5–2 authorizes a liquidated damage award where there exists a nonpayment of wages and provides:

"Every such person, firm, corporation, limited liability company, or association who shall fail to make payment of wages to any such employee as provided in section 1 [IC 22–2–5–1] of this chapter shall, as liquidated damages for such failure, pay to such employee for each day that the amount due to him remains un-

paid ten percent (10%) of the amount due to him in addition thereto, not exceeding double the amount of wages due, and said damages may be recovered in any court having jurisdiction of a suit to recover the amount due to such employee, and in any suit so brought to recover said wages or the liquidated damages for the nonpayment thereof, or both, the court shall tax and assess as costs in said case a reasonable fee for the plaintiff's attorney or attorneys."

fact to be resolved by the appropriate findings of the court. *Id.* at 835. However, the court found that there was an issue of material fact regarding the extent to which the plaintiff was able to engage in personal pursuits during his on call time. *Id.* at 837.

Turning to the present case, we must determine whether the Appellants should be compensated for their meal times when they were on duty. The authority provided by the Appellants suggests that the compensability of such time turns on the factual questions of whether the time was spent for the benefit of the employer and whether the employee engaged in personal pursuits. *See Armour,* 323 U.S. at 133, 65 S.Ct. at 168; *Kelly,* 298 F.Supp. at 1307–1308. Moreover, because these factual questions are material, summary judgment is not appropriate when they are in dispute.[2] *See Shamblin,* 793 F.Supp. at 837–838.

■ The record reveals that Emas disputed, among other issues, whether the Appellants were able to use their meal time for their personal pursuits. In its memorandum in response to the Appellants' motion for summary judgment, Emas listed a number of issues of material fact, including whether "[c]alls are so frequent or the on-call conditions so restrictive that employees cannot effectively use the call time for their own purposes." Record, p. 47. Emas argued that because the Appellants were issued pagers, "they could leave the ambulance for a meal period or any other personal business." Record, p. 48. In support of its argument, Emas designated the affidavit of Loretta Taylor, who stated that the ambulance crews were given pagers which allowed them to leave the ambulance for any personal reasons. During the summary judgment hearing, Emas also stated that there was a factual dispute about whether the conditions of the meal break were so restrictive that the Appellants should be compensated for this time.

2. Although we are compelled to follow faithfully and directly controlling supreme court precedent, we are not likewise obligated to follow district court opinions. *See Hopwood v. State of Texas,* 84 F.3d 720, 722 (5th Cir.1996), *cert.*

Upon review, we find that there was a genuine issue of material fact concerning whether the Appellants were able to engage in personal pursuits during their meal times. *See Shamblin,* 793 F.Supp. at 837. Given the existence of disputed facts, we cannot rule that the Appellants were entitled to judgment as a matter of law. *See Cowe,* 575 N.E.2d at 633. Therefore, we hold that the trial court did not err in denying summary judgment. *See Ayres,* 493 N.E.2d at 1234.

For the foregoing reasons, the judgment of the trial court is affirmed.

RUCKER, J., concurs.

STATON, J., dissents with separate opinion.

STATON, Judge, dissenting.

I dissent. The undisputed facts of this case show that the time spent on-call during meal periods is compensable under the FLSA as a matter of law.

Bona fide meal periods are not working time and not compensable under the FLSA. 29 C.F.R. § 785.19 (1996). To be a bona fide meal period, the employee must be completely relieved of duty during the meal period. *Id.* If an employee's time during the meal period is spent predominantly for the benefit of the employer, he is not relieved of duty and the meal period is compensable work time. *Henson v. Pulaski County Sheriff Dept.,* 6 F.3d 531, 534 (8th Cir.1993).

Being on-call with some limited restrictions does not necessarily render meal times compensable. *Lamon v. City of Shawnee,* 972 F.2d 1145, 1157 (10th Cir.1992). What matters is whether the employee is subject to severe limitations on his personal freedom which benefit the employer. *Avery v. City of Talladega,* 24 F.3d 1337, 1345 (11th Cir. 1994). Factors to be considered in determining whether the on-call time is compensable include:

(1) whether there [is] an on-premises living requirement; (2) whether there [are]

*denied,* —— U.S. ——, 116 S.Ct. 2581, 135 L.Ed.2d 1095. Here, we find the reasoning of *Kelly* and *Shamblin* to be applicable to the present case and, therefore, have relied on these cases to support our opinion.

excessive geographical restrictions on the employee's movements; (3) whether the frequency of the calls [is] unduly restrictive; (4) whether a fixed time limit for response [is] unduly restrictive; (5) whether the on-call employee could easily trade on-call responsibilities; (6) whether the use of a pager could ease restrictions; and (7) whether the employee had actually engaged in personal activities during the call-in time.

*SEIU, Local 102 v. County of San Diego,* 60 F.3d 1346, 1354 (9th Cir.1994). These factors must be balanced to determine whether the employee was effectively engaged to wait. *Berry v. County of Sonoma,* 30 F.3d 1174, 1183 (9th Cir.1994). If an employee is engaged to wait, the on-call time is compensable work time. *Armour & Co. v. Wantock,* 323 U.S. 126, 133–34, 65 S.Ct. 165, 168–69, 89 L.Ed. 118 (1944).

Here, the Majority determines that there is a dispute concerning whether the frequency of the calls or the restrictions on the meal period were so restrictive that the employees were able to use the meal periods for personal pursuits Regardless of the frequency of the calls, an analysis of the other factors show that the employees' time was so severely restricted during the meal time, that they were engaged to wait and, thus, the time was spent predominantly for the benefit of the employer.[3] The undisputed facts show that the employees were subject to a two minute response time in the event of an emergency call. This is an extreme restriction on their personal freedom because even with the use of a pager, the employee could not stray very far from the ambulance or the station and could not conduct much personal business. The ambulance drivers could not trade on-call responsibilities and could not refuse a call for any reason. EMAS benefited from these restrictions by constantly maintaining an available pool of ambulance drivers.

Whether a set of facts constitutes work and gives rise to liability under the FLSA is a question of law for the court to decide.

*Birdwell v. City of Gadsden,* 970 F.2d 802, 807–08 (11th Cir.1992). The facts of the case show that the employees' personal freedom was so severely restricted by the on-call restrictions that they were "engaged to wait" and their meal period was spent predominantly for the benefit of EMAS. *Armour, supra,* at 133–34, 65 S.Ct. at 168–69; *Avery, supra,* at 1345. I would reverse the trial court's decision and grant summary judgment in favor of the employees.

---

**3.** The U.S. Supreme Court has held that on-call time was compensable when calls were not frequent, but the other limitations, such as geographical restrictions, on the employees' time were so restrictive that the employees were unable to engage in personal pursuits. *See, Armour, supra; Skidmore v. Swift,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944).