## IBP, INC. *v.* ALVAREZ, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, ET AL.

No. 03–1238.   Argued October 3, 2005—Decided November 8, 2005*

---

*Together with No. 04–66, *Tum et al.* v. *Barber Foods, Inc., dba Barber Foods,* on certiorari to the United States Court of Appeals for the First Circuit.

22

STEVENS, J., delivered the opinion for a unanimous Court.

*Carter G. Phillips* argued the cause for petitioner in No. 03–1238 and for respondent in No. 04–66. With him on the briefs in No. 03–1238 were *Joseph R. Guerra, Rebecca K. Wood, Michael J. Mueller,* and *Joel M. Cohn.* On the brief in No. 04–66 was *Graydon G. Stevens.*

*Thomas C. Goldstein* argued the cause for petitioners in No. 04–66 and for respondents in No. 03–1238. With him on the briefs in No. 04–66 were *Amy Howe, Kevin K. Russell, Pamela S. Karlan, Timothy B. Fleming, Lori B. Kisch,* and *William C. Nugent.* On the brief in No. 03–1238 were *David N. Mark, William Rutzick,* and *Kathryn Goater.*

*Irving L. Gornstein* argued the cause for the United States as *amicus curiae* supporting respondents in No. 03–1238 and petitioners in No. 04–66. With him on the brief were *Solicitor General Clement, Deputy Solicitor*

*General Hungar, Howard M. Radzely, Allen H. Feldman, Steven J. Mandel,* and *Michael P. Doyle.*†

JUSTICE STEVENS delivered the opinion of the Court.

These consolidated cases raise questions concerning the coverage of the Fair Labor Standards Act of 1938 (FLSA), as amended by the Portal-to-Portal Act of 1947, with respect to activities of employees who must don protective clothing on the employer's premises before they engage in the productive labor for which they are primarily hired. The principal question, which is presented in both cases, is whether the time employees spend walking between the changing area and the production area is compensable under the FLSA. The second question, which is presented only in No. 04–66, is whether the time employees spend waiting to put on the protective gear is compensable under the statute. In No. 03–1238, the Court of Appeals for the Ninth Circuit answered "yes" to the first question, 339 F. 3d 894 (2003); in No. 04–66, the Court of Appeals for the First Circuit answered "no" to both questions, 360 F. 3d 274, 281 (2004). We granted certiorari to resolve the conflict. 543 U. S. 1144 (2005).

---

†A brief of *amici curiae* urging reversal in No. 04–66 was filed for the National Employment Lawyers Association et al. by *Sandra Thourot Krider, Marissa M. Tirona, Patricia A. Shiu,* and *Catherine K. Ruckelshaus.*

Briefs of *amici curiae* urging reversal in No. 03–1238 and affirmance in No. 04–66 were filed for the Chamber of Commerce of the United States of America et al. by *Samuel Estreicher, Meir Feder, Robin S. Conrad, Robert Costagliola,* and *Quentin Riegel;* and for the National Chicken Council et al. by *David R. Wylie* and *D. Christopher Lauderdale.*

*Jonathan P. Hiatt, James B. Coppess,* and *Laurence Gold* filed a brief for the American Federation of Labor and Congress of Industrial Organizations as *amicus curiae* urging reversal in No. 04–66 and affirmance in No. 03–1238.

# I

As enacted in 1938, the FLSA, 29 U. S. C. § 201 *et seq.*, required employers engaged in the production of goods for commerce to pay their employees a minimum wage of "not less than 25 cents an hour," § 6(a)(1), 52 Stat. 1062, and prohibited the employment of any person for workweeks in excess of 40 hours after the second year following the legislation "unless such employee receives compensation for his employment in excess of [40] hours . . . at a rate not less than one and one-half times the regular rate at which he is employed," *id.,* § 7(a)(3), at 1063. Neither "work" nor "workweek" is defined in the statute.[1]

Our early cases defined those terms broadly. In *Tennessee Coal, Iron & R. Co.* v. *Muscoda Local No. 123,* 321 U. S. 590 (1944), we held that time spent traveling from iron ore mine portals to underground working areas was compensable; relying on the remedial purposes of the statute and Webster's Dictionary, we described "work or employment" as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Id.,* at 598; see *id.,* at 598, n. 11. The same year, in *Armour & Co.* v. *Wantock,* 323 U. S. 126 (1944), we clarified that "exertion" was not in fact necessary for an activity to constitute "work" under the FLSA. We pointed out that "an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen." *Id.,* at 133. Two years later, in *Anderson* v. *Mt. Clemens Pottery Co.,* 328 U. S. 680 (1946), we defined "the statutory workweek" to "includ[e] all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." *Id.,* at 690–691. Accord-

---

[1] The most pertinent definition provides: "'Employ' includes to suffer or permit to work." 52 Stat. 1060, 29 U. S. C. § 203(g).

ingly, we held that the time necessarily spent by employees walking from timeclocks near the factory entrance gate to their workstations must be treated as part of the workweek. *Id.*, at 691–692.

The year after our decision in *Anderson,* Congress passed the Portal-to-Portal Act, amending certain provisions of the FLSA. Based on findings that judicial interpretations of the FLSA had superseded "long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation," 61 Stat. 84, it responded with two statutory remedies, the first relating to "existing claims," *id.*, at 85–86, and the second to "future claims," *id.*, at 87–88. Both remedies distinguish between working time that is compensable pursuant to contract or custom and practice, on the one hand, and time that was found compensable under this Court's expansive reading of the FLSA, on the other. Like the original FLSA, however, the Portal-to-Portal Act omits any definition of the term "work."

With respect to existing claims, the Portal-to-Portal Act provided that employers would not incur liability on account of their failure to pay minimum wages or overtime compensation for any activity that was not compensable by either an express contract or an established custom or practice.[2]

---

[2] Part II of the Portal-to-Portal Act, entitled "EXISTING CLAIMS," states in relevant part:

"SEC. 2. RELIEF FROM CERTAIN EXISTING CLAIMS UNDER THE FAIR LABOR STANDARDS ACT OF 1938 ... —

"(a) No employer shall be subject to any liability or punishment under the Fair Labor Standards Act ... (in any action or proceeding commenced prior to or on or after the date of the enactment of this Act), on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any activity of an employee engaged in prior to the date of the enactment of this Act, except an activity which was compensable by either—

With respect to "future claims," the Act preserved potential liability for working time not made compensable by contract or custom but narrowed the coverage of the FLSA by excepting two activities that had been treated as compensable under our cases: walking on the employer's premises to and from the actual place of performance of the principal activity of the employee, and activities that are "preliminary or postliminary" to that principal activity.

Specifically, Part III of the Portal-to-Portal Act, entitled "FUTURE CLAIMS," provides in relevant part:

> "SEC. 4. RELIEF FROM CERTAIN FUTURE CLAIMS UNDER THE FAIR LABOR STANDARDS ACT OF 1938 ... —
>
> "(a) Except as provided in subsection (b) [which covers work compensable by contract or custom], no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, ... on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after the date of the enactment of this Act—
>
> "(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> "(2) activities which are preliminary to or postliminary to said principal activity or activities,

"(1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or

"(2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee was employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer." 61 Stat. 85 (codified at 29 U. S. C. § 252(a)).

"which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." 61 Stat. 86–87 (codified at 29 U. S. C. §254(a)).

Other than its express exceptions for travel to and from the location of the employee's "principal activity," and for activities that are preliminary or postliminary to that principal activity, the Portal-to-Portal Act does not purport to change this Court's earlier descriptions of the terms "work" and "workweek," or to define the term "workday." A regulation promulgated by the Secretary of Labor shortly after its enactment concluded that the statute had no effect on the computation of hours that are worked "within" the workday. That regulation states: "[T]o the extent that activities engaged in by an employee occur after the employee commences to perform the first principal activity on a particular workday and before he ceases the performance of the last principal activity on a particular workday, the provisions of [§4] have no application." 29 CFR §790.6(a) (2005).[3] Simi-

_____

[3] The regulation provides in full:

"Section 4 of the Portal Act does not affect the computation of hours worked within the 'workday' proper, roughly described as the period 'from whistle to whistle,' and its provisions have nothing to do with the compensability under the Fair Labor Standards Act of any activities engaged in by an employee during that period. Under the provisions of section 4, one of the conditions that must be present before 'preliminary' or 'postliminary' activities are excluded from hours worked is that they 'occur either prior to the time on any particular workday at which the employee commences, or subsequent to the time on any particular workday at which he ceases' the principal activity or activities which he is employed to perform. Accordingly, to the extent that activities engaged in by an employee occur after the employee commences to perform the first principal activity on a particular workday and before he ceases the performance of the last principal activity on a particular workday, the provisions of that section have no application. Periods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of

larly, consistent with our prior decisions interpreting the FLSA, the Department of Labor has adopted the continuous workday rule, which means that the "workday" is generally defined as "the period between the commencement and completion on the same workday of an employee's principal activity or activities." § 790.6(b). These regulations have remained in effect since 1947, see 12 Fed. Reg. 7658 (1947), and no party disputes the validity of the continuous workday rule.

In 1955, eight years after the enactment of the Portal-to-Portal Act and the promulgation of these interpretive regulations, we were confronted with the question whether workers in a battery plant had a statutory right to compensation for the "time incident to changing clothes at the beginning of the shift and showering at the end, where they must make extensive use of dangerously caustic and toxic materials, and are compelled by circumstances, including vital considerations of health and hygiene, to change clothes and to shower in facilities which state law requires their employers to provide . . . ." *Steiner* v. *Mitchell*, 350 U. S. 247, 248 (1956). After distinguishing "changing clothes and showering under normal conditions" and stressing the important health and safety risks associated with the production of batteries, *id.*, at 249, the Court endorsed the Court of Appeals' conclusion that these activities were compensable under the FLSA.

In reaching this result, we specifically agreed with the Court of Appeals that "the term 'principal activity or activities' in Section 4 [of the Portal-to-Portal Act] embraces all activities which are an 'integral and indispensable part of

---

hours worked to the same extent as would be required if the Portal Act had not been enacted. The principles for determining hours worked within the 'workday' proper will continue to be those established under the Fair Labor Standards Act without reference to the Portal Act, which is concerned with this question only as it relates to time spent outside the 'workday' in activities of the kind described in section 4." § 790.6(a) (footnotes omitted).

the principal activities,' and that the activities in question fall within this category." *Id.*, at 252–253. Thus, under *Steiner*, activities, such as the donning and doffing of specialized protective gear, that are "performed either before or after the regular work shift, on or off the production line, are compensable under the portal-to-portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by Section 4(a)(1)." *Id.*, at 256.

The principal question presented by these consolidated cases—both of which involve required protective gear that the courts below found integral and indispensable to the employees' work—is whether postdonning and predoffing walking time is specifically excluded by § 4(a)(1). We conclude that it is not.

## II

Petitioner in No. 03–1238, IBP, Inc. (IBP), is a large producer of fresh beef, pork, and related products. At its plant in Pasco, Washington, it employs approximately 178 workers in 113 job classifications in the slaughter division and 800 line workers in 145 job classifications in the processing division. All production workers in both divisions must wear outer garments, hardhats, hairnets, earplugs, gloves, sleeves, aprons, leggings, and boots. Many of them, particularly those who use knives, must also wear a variety of protective equipment for their hands, arms, torsos, and legs; this gear includes chain link metal aprons, vests, plexiglass armguards, and special gloves. IBP requires its employees to store their equipment and tools in company locker rooms, where most of them don their protective gear.

Production workers' pay is based on the time spent cutting and bagging meat. Pay begins with the first piece of meat and ends with the last piece of meat. Since 1998, however,

IBP has also paid for four minutes of clothes-changing time.[4] In 1999, respondents, IBP employees, filed this class action to recover compensation for preproduction and postproduction work, including the time spent donning and doffing protective gear and walking between the locker rooms and the production floor before and after their assigned shifts.

After a lengthy bench trial, the District Court for the Eastern District of Washington held that donning and doffing of protective gear that was unique to the jobs at issue were compensable under the FLSA because they were integral and indispensable to the work of the employees who wore such equipment. Moreover, consistent with the continuous workday rule, the District Court concluded that, for those employees required to don and doff unique protective gear, the walking time between the locker room and the production floor was also compensable because it occurs during the workday.[5] The court did not, however, allow any recovery for ordinary clothes changing and washing, or for the "donning and doffing of hard hat[s], ear plugs, safety glasses, boots [or] hairnet[s]." App. to Pet. for Cert. in No. 03–1238, p. 65a.

The District Court proceeded to apply these legal conclusions in making detailed factual findings with regard to the different groups of employees. For example, the District

---

[4] IBP does not contend that this clothes-changing time fully compensated respondents for the preproduction and postproduction time at issue in this case.

[5] The District Court explained:

"Walking time is compensable if it occurs after the start of the workday. 29 U. S. C. §254(a). Walking time is excluded under the Portal to Portal Act only if it occurs 'either prior to the time on any particular work day at which such employee commences or subsequent to the time on any particular work day at which he ceases such principal activity or activities.' Id. The work day begins with the commencement of an employee's principal activity or activities and ends with the completion of the employee's activity . . . ." App. to Pet. for Cert. in No. 03–1238, pp. 53a–54a.

Court found that, under its view of what was covered by the FLSA, processing division knife users were entitled to compensation for between 12 and 14 minutes of preproduction and postproduction work, including 3.3 to 4.4 minutes of walking time.

The Court of Appeals agreed with the District Court's ultimate conclusions on these issues, but in part for different reasons. 339 F. 3d 894 (CA9 2003). After noting that the question whether activities "'are an integral and indispensable part of the principal activities'" within the meaning of *Steiner* is "context specific," 339 F. 3d, at 902, the Court of Appeals endorsed the distinction between the burdensome donning and doffing of elaborate protective gear, on the one hand, and the time spent donning and doffing nonunique gear such as hardhats and safety goggles, on the other. It did so not because donning and doffing nonunique gear are categorically excluded from being "principal activities" as defined by the Portal-to-Portal Act, but rather because, in the context of this case, the time employees spent donning and doffing nonunique protective gear was "'*de minimis* as a matter of law.'" *Id.*, at 904.

IBP does not challenge the holding below that, in light of *Steiner*, the donning and doffing of unique protective gear are "principal activities" under § 4 of the Portal-to-Portal Act. Moreover, IBP has not asked us to overrule *Steiner*. Considerations of *stare decisis* are particularly forceful in the area of statutory construction, especially when a unanimous interpretation of a statute has been accepted as settled law for several decades. Thus, the only question for us to decide is whether the Court of Appeals correctly rejected IBP's contention that the walking between the locker rooms and the production areas is excluded from FLSA coverage by § 4(a)(1) of the Portal-to-Portal Act.

IBP argues that the text of § 4(a)(1), the history and purpose of its enactment, and the Department of Labor's interpretive guidance compel the conclusion that the Portal-to-

Portal Act excludes this walking time from the scope of the FLSA. We find each of these arguments unpersuasive.

*Text*

IBP correctly points out that our decision in *Steiner* held only that the donning and doffing of protective gear in that case were activities "integral and indispensable" to the workers' principal activity of making batteries. 350 U. S., at 256. In IBP's view, a category of "integral and indispensable" activities that may be compensable because they are not merely preliminary or postliminary within the meaning of § 4(a)(2) is not necessarily coextensive with the actual "principal activities" which the employee "is employed to perform" within the meaning of § 4(a)(1). In other words, IBP argues that, even though the court below concluded that donning and doffing of unique protective gear are "integral and indispensable" to the employees' principal activity, this means only that the donning and doffing of such gear are themselves covered by the FLSA. According to IBP, the donning is *not* a "principal activity" that starts the workday, and the walking that occurs immediately after donning and immediately before doffing is not compensable. In effect, IBP asks us to create a third category of activities—those that are "integral and indispensable" to a "principal activity" and thus not excluded from coverage by § 4(a)(2), but that are not themselves "principal activities" as that term is defined by § 4(a)(1).

IBP's submission is foreclosed by *Steiner*. As noted above, in *Steiner* we made it clear that § 4 of the Portal-to-Portal Act does not remove activities which are " 'integral and indispensable' " to " 'principal activities' " from FLSA coverage precisely because such activities are themselves " 'principal activities.' " *Id.,* at 253. While *Steiner* specifically addressed the proper interpretation of the term "principal activity or activities" in § 4(a)(2), there is no plausible argument that these terms mean something different in

§ 4(a)(2) than they do in § 4(a)(1).[6]   This is not only because of the normal rule of statutory interpretation that identical words used in different parts of the same statute are generally presumed to have the same meaning.   *E. g., Sullivan* v. *Stroop,* 496 U. S. 478, 484 (1990).   It is also because § 4(a)(2) refers to "*said* principal activity or activities."   61 Stat. 87 (emphasis added).   The "said" is an explicit reference to the use of the identical term in § 4(a)(1).

Indeed, IBP has not offered any support for the unlikely proposition that Congress intended to create an intermediate category of activities that would be sufficiently "principal" to be compensable, but not sufficiently principal to commence the workday.   Accepting the necessary import of our holding in *Steiner,* we conclude that the locker rooms where the special safety gear is donned and doffed are the relevant "place of performance" of the principal activity that the employee was employed to perform within the meaning of § 4(a)(1). Walking to that place before starting work is excluded from FLSA coverage, but the statutory text does not exclude walking from that place to another area within the plant immediately after the workday has commenced.

*Purpose*

IBP emphasizes that our decision in *Anderson* v. *Mt. Clemens Pottery Co.,* 328 U. S. 680, may well have been the proximate cause of the enactment of the Portal-to-Portal Act.   In that case we held that the FLSA mandated compensation for the time that employees spent walking from time-clocks located near the plant entrance to their respective places of work prior to the start of their productive labor. *Id.,* at 690–691.   In IBP's view, Congress' forceful repudia-

---

[6] In fact, as noted above, in *Steiner* we specifically endorsed the view of the Court of Appeals that the definition of "principal activity or activities" in § 4 encompassed activities " 'integral and indispensable' " to those principal activities.   We did not make any distinction between § 4(a)(1) and § 4(a)(2).   350 U. S., at 253.

tion of that holding reflects a purpose to exclude what IBP regards as the quite similar walking time spent by respondents before and after their work slaughtering cattle and processing meat. Even if there is ambiguity in the statute, we should construe it to effectuate that important purpose.

This argument is also unpersuasive. There is a critical difference between the walking at issue in *Anderson* and the walking at issue in this case. In *Anderson* the walking preceded the employees' principal activity; it occurred before the workday began. The relevant walking in this case occurs after the workday begins and before it ends. Only if we were to endorse IBP's novel submission that an activity can be sufficiently "principal" to be compensable, but not sufficiently so to start the workday, would this case be comparable to *Anderson.*

Moreover, there is a significant difference between the open-ended and potentially expansive liability that might result from a rule that treated travel before the workday begins as compensable, and the rule at issue in this case. Indeed, for processing division knife users, the largest segment of the work force at IBP's plant, the walking time in dispute here consumes less time than the donning and doffing activities that precede or follow it. It is more comparable to time spent walking between two different positions on an assembly line than to the prework walking in *Anderson.*

## Regulations

The regulations adopted by the Secretary of Labor in 1947 support respondents' view that when donning and doffing of protective gear are compensable activities, they may also define the outer limits of the workday. Under those regulations, the few minutes spent walking between the locker rooms and the production area are similar to the time spent walking between two different workplaces on the disassembly line. See 29 CFR § 790.7(c) (2005) (explaining that the Portal-to-Portal Act does not affect the compensability of

time spent traveling from the place of performance of one principal activity to that of another). See also § 785.38 (explaining, in a later regulation interpreting the FLSA, that "[w]here an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked . . . ").

IBP argues, however, that two provisions in the regulations point to a different conclusion—the use of the phrase "whistle to whistle" in discussing the limits of the "workday," § 790.6, and a footnote stating that postchanging walking time is not "necessarily" excluded from the scope of § 4(a)(1), § 790.7(g), n. 49.

The "whistle to whistle" reference does reflect the view that in most situations the workday will be defined by the beginning and ending of the primary productive activity. But the relevant text describes the workday as *"roughly the period 'from whistle to whistle.'"* § 790.6(a) (emphasis added). Indeed, the next subsection of this same regulation states: "'Workday' as used in the Portal Act means, in general, the period between the commencement and completion on the same workday of an employee's principal activity or activities." § 790.6(b). IBP's emphasis on the "whistle to whistle" reference is unavailing.

The footnote on which IBP relies states:

> "Washing up after work, like the changing of clothes, may in certain situations be so directly related to the specific work the employee is employed to perform that it would be regarded as an integral part of the employee's 'principal activity.' This *does not necessarily mean,* however, that travel between the washroom or clothes-changing place and the actual place of performance of the specific work the employee is employed to perform, would be excluded from the type of travel to

which section 4(a) refers." §790.7(g), n. 49 (emphasis added; citations omitted).

This footnote does indicate that the Secretary assumed that there would be some cases in which walking between a locker room where the employee performs her first principal activity and the production line would be covered by the FLSA and some cases in which it would not be. That assumption is, of course, inconsistent with IBP's submission that such walking is *always* excluded by §4(a), just as it is inconsistent with respondents' view that such walking is *never* excluded. Whatever the correct explanation for the Secretary's ambiguous (and apparently ambivalent) statement may be, it is not sufficient to overcome the clear statements in the text of the regulations that support our holding. And it surely is not sufficient to overcome the statute itself, whose meaning is definitively resolved by *Steiner.*

For the foregoing reasons, we hold that any activity that is "integral and indispensable" to a "principal activity" is itself a "principal activity" under §4(a) of the Portal-to-Portal Act. Moreover, during a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded from the scope of that provision, and as a result is covered by the FLSA.

### III

Respondent in No. 04–66, Barber Foods, Inc. (Barber), operates a poultry processing plant in Portland, Maine, that employs about 300 production workers. These employees operate six production lines and perform a variety of tasks that require different combinations of protective clothing. They are paid by the hour from the time they punch in to computerized timeclocks located at the entrances to the production floor.

Petitioners are Barber employees and former employees who brought this action to recover compensation for alleged

unrecorded work covered by the FLSA. Specifically, they claimed that Barber's failure to compensate them for (a) donning and doffing required protective gear and (b) the attendant walking and waiting violated the statute.

After extensive discovery, the Magistrate Judge issued a comprehensive opinion analyzing the facts in detail, and recommending the entry of partial summary judgment in favor of Barber. That opinion, which was later adopted by the District Court for Maine, included two critical rulings.

First, the Magistrate Judge held that "the donning and doffing of clothing and equipment required by the defendant or by government regulation, as opposed to clothing and equipment which employees choose to wear or use at their option, is an integral part of the plaintiffs' work [and therefore are] not excluded from compensation under the Portal-to-Portal Act as preliminary or postliminary activities." App. to Pet. for Cert. in No. 04–66, pp. 36a–40a.

Second, the Magistrate Judge rejected petitioners' claims for "compensation for the time spent before obtaining their clothing and equipment." *Id.*, at 33a. Such time, in the Magistrate Judge's view, "could [not] reasonably be construed to be an integral part of employees' work activities any more than walking to the cage from which hairnets and earplugs are dispensed . . . ." *Ibid.* Accordingly, Barber was "entitled to summary judgment on any claims based on time spent walking from the plant entrances to an employee's workstation, locker, time clock or site where clothing and equipment required to be worn on the job is to be obtained and any claims based on time spent waiting to punch in or out for such clothing or equipment." *Id.*, at 33a–34a.

The Magistrate Judge's opinion did not specifically address the question whether the walking time between the production line and the place of donning and doffing was encompassed by §4 of the Portal-to-Portal Act, and thus excluded from coverage under the FLSA. Whatever the intended scope of the Magistrate's grant of partial summary judg-

ment, the questions submitted to the jury after trial asked jurors to consider only whether Barber was required to compensate petitioners for the time they spent actually donning and doffing various gear.

Before the case was submitted to the jury, the parties stipulated that four categories of workers—rotating, setup, meatroom, and shipping and receiving associates—were required to don protective gear at the beginning of their shifts and were required to doff this gear at the end of their shifts. The jury then made factual findings with regard to the amount of time reasonably required for each category of employees to don and doff such items; the jury concluded that such time was *de minimis* and therefore not compensable. The jury further concluded that two other categories of employees—maintenance and sanitation associates—were not required to don protective gear before starting their shifts.[7] Accordingly, the jury ruled for Barber on all counts.

On appeal, petitioners argued, among other things, that the District Court had improperly excluded as noncompensable the time employees spend walking to the production floor after donning required safety gear and the time they spend walking from the production floor to the area where they doff such gear. The Court of Appeals rejected petitioners' argument, concluding that such walking time was a species of preliminary and postliminary activity excluded from FLSA coverage by §§ 4(a)(1) and (2) of the Portal-to-Portal Act. 360 F. 3d, at 281. As we have explained in our discussion of IBP's submission, see Part II, *supra,* that categorical conclusion was incorrect.

Petitioners also argued in the Court of Appeals that the waiting time associated with the donning and doffing of clothes was compensable. The Court of Appeals disagreed, holding that the waiting time qualified as a "preliminary or postliminary activity" and thus was excluded from FLSA

---

[7] The claims brought by these workers are no longer part of this case.

coverage by the Portal-to-Portal Act. 360 F. 3d, at 282. Our analysis in Part II, *supra,* demonstrates that the Court of Appeals was incorrect with regard to the predoffing waiting time. Because doffing gear that is "integral and indispensable" to employees' work is a "principal activity" under the statute, the continuous workday rule mandates that time spent waiting to doff is not affected by the Portal-to-Portal Act and is instead covered by the FLSA.

The time spent waiting to don—time that elapses *before* the principal activity of donning integral and indispensable gear—presents the quite different question whether it should have the effect of advancing the time when the workday begins. Barber argues that such predonning waiting time is explicitly covered by § 4(a)(2) of the Portal-to-Portal Act, which, as noted above, excludes "activities which are preliminary to or postliminary to [a] principal activity or activities" from the scope of the FLSA. 29 U. S. C. § 254(a)(2).

By contrast, petitioners, supported by the United States as *amicus curiae,* maintain that the predonning waiting time is "integral and indispensable" to the "principal activity" of donning, and is therefore itself a principal activity. However, unlike the donning of certain types of protective gear, which is *always* essential if the worker is to do his job, the waiting may or may not be necessary in particular situations or for every employee. It is certainly not "integral and indispensable" in the same sense that the donning is. It does, however, always comfortably qualify as a "preliminary" activity.

We thus do not agree with petitioners that the predonning waiting time at issue in this case is a "principal activity" under § 4(a).[8] As Barber points out, the fact that certain preshift activities are necessary for employees to engage in their principal activities does not mean that those preshift activities are "integral and indispensable" to a "principal ac-

---

[8] As explained below, our analysis would be different if Barber required its employees to arrive at a particular time in order to begin waiting.

tivity" under *Steiner.* For example, walking from a time-clock near the factory gate to a workstation is certainly necessary for employees to begin their work, but it is indisputable that the Portal-to-Portal Act evinces Congress' intent to repudiate *Anderson's* holding that such walking time was compensable under the FLSA. We discern no limiting principle that would allow us to conclude that the waiting time in dispute here is a "principal activity" under § 4(a), without also leading to the logical (but untenable) conclusion that the walking time at issue in *Anderson* would be a "principal activity" under § 4(a) and would thus be unaffected by the Portal-to-Portal Act.

The Government also relies on a regulation promulgated by the Secretary of Labor as supporting petitioners' view. That regulation, 29 CFR § 790.7(h) (2005), states that when an employee "is required by his employer to report at a particular hour at his workbench or other place where he performs his principal activity, if the employee is there at that hour ready and willing to work but for some reason beyond his control there is no work for him to perform until some time has elapsed, waiting for work would be an integral part of the employee's principal activities." That regulation would be applicable if Barber required its workers to report to the changing area at a specific time only to find that no protective gear was available until after some time had elapsed, but there is no such evidence in the record in this case.

More pertinent, we believe, is the portion of § 790.7 that characterizes the time that employees must spend waiting to check in or waiting to receive their paychecks as generally a "preliminary" activity covered by the Portal-to-Portal Act. See § 790.7(g). That regulation is fully consistent with the statutory provisions that allow the compensability of such collateral activities to depend on either the agreement of the parties or the custom and practice in the particular industry.

In short, we are not persuaded that such waiting—which in this case is two steps removed from the productive activity on the assembly line—is "integral and indispensable" to a "principal activity" that identifies the time when the continuous workday begins. Accordingly, we hold that §.4(a)(2) excludes from the scope of the FLSA the time employees spend waiting to don the first piece of gear that marks the beginning of the continuous workday.

## IV

For the reasons stated above, we affirm the judgment of the Court of Appeals for the Ninth Circuit in No. 03–1238. We affirm in part and reverse in part the judgment of the Court of Appeals for the First Circuit in No. 04–66, and we remand the case for further proceedings consistent with this opinion.

*It is so ordered.*