In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-1221

SUSAN KELLAR,

*Plaintiff-Appellant,*

*v.*

SUMMIT SEATING INCORPORATED,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:09-cv-00464—**Christopher A. Nuechterlein**, *Magistrate Judge.*

ARGUED JUNE 3, 2011—DECIDED DECEMBER 14, 2011

Before EVANS[*] and WILLIAMS, *Circuit Judges*, and
CONLEY, *District Judge.*[**]

---

[*] Circuit Judge Evans died on August 10, 2011, and did not
participate in the decision of this case, which is being
resolved by a quorum of the panel under 28 U.S.C. § 46(d).

[**] The Honorable William M. Conley, Chief Judge of the
United States District Court for the Western District of Wiscon-
sin, sitting by designation.

WILLIAMS, *Circuit Judge*. Susan Kellar contends that she is entitled to overtime under the Fair Labor Standards Act for work performed prior to the official start of her work shift. The district court granted summary judgment in favor of her employer, Summit Seating, because it found that Kellar's pre-shift activities were "preliminary," that any work Kellar performed before her shift was *"de minimis,"* and that Summit did not know that Kellar was engaging in pre-shift work. While we disagree with the district court's conclusions regarding the "preliminary" and *"de minimis"* nature of Kellar's pre-shift work, we affirm because we conclude that Summit did not know or have reason to know that Kellar was working before her shift.

## I. BACKGROUND

Summit Seating ("Summit") is a small company that manufactures seating for buses, trucks, and vans. In 2001, Susan Kellar began working for Summit as a cutter's helper, and in 2004 she was promoted to sewing manager. In that capacity, she was responsible for supplying sewers with their sewing products, tracking supplies, ensuring that work was completed on schedule, and training junior employees. Kellar managed between seven and eight employees, and was paid on an hourly basis.

In her deposition, Kellar claimed that she regularly arrived at Summit's factory between 15 and 45 minutes before the start of her 5:00 a.m. shift. When she arrived before or at the same time as her sister and co-worker,

Mamie Spice, Kellar spent about 5 minutes unlocking doors, turning on lights, turning on the compressor, and punching in on the time clock. Then she prepared coffee for the rest of Summit's employees, which took her about 5 minutes. Depending on her workload, she spent 5 to 10 minutes (or longer) reviewing schedules and gathering and distributing fabric and materials to her subordinates' workstations, "so that they could go straight to work, rather than waiting for [her] to bring [fabric] to them." For another 5 minutes, she drank coffee and smoked a cigarette. The remaining time was spent performing "prototype work" (preparing models for production), cleaning the work area, or checking patterns. According to Kellar, no one told her that she needed to come in before her shift, but she arrived early because it would have been "a hassle" to show up at 5:00 a.m. and still get her subordinates up and running close to the start of their 5:00 a.m. work shifts. Kellar's time cards reflect that she often punched in early, although on those days when she forgot to clock in, Kellar would write the official start time of her shift on her time card.

Spice, who is still employed at Summit, tells a different story. In an affidavit, Spice claimed that Kellar never performed any work before the start of her shift. Rather, after clocking in, she and Kellar would chat and drink coffee until their shifts began.

Kellar acknowledged in her deposition that many Summit employees would clock in early and socialize until the start of their shifts. And on one occasion, at her supervisor's behest, Kellar reprimanded a sub-

ordinate for punching in too early. Nevertheless, Kellar insists that, excluding a five-minute smoking and coffee break, she spent her pre-shift time at Summit working, not socializing.

If Kellar arrived early in order to work, her supervisors, Ray and Sue Fink, who were the owners and the president and vice-president of Summit, respectively, never personally observed it. They typically arrived at the factory after Kellar, between 7:00 and 8:00 a.m. Kellar testified that she had a good relationship with the Finks and felt "comfortable going to them with problems." Kellar was also aware that Summit had a policy (outlined in its employee handbook) requiring employees to request pre-approval to work overtime. Even so, Kellar never told the Finks that she was working before the start of her shift. She also never reported errors with her paychecks, requested overtime pay, or mentioned during the weekly production meetings she attended with the Finks that her schedule needed to be adjusted to account for her pre-shift work.

In February 2009, Kellar voluntarily resigned and later sued Summit, claiming that she was not paid overtime wages in violation of the Fair Labor Standards Act ("FLSA"). The district court granted summary judgment in favor of Summit, finding that Kellar was not entitled to overtime wages. This appeal followed.

## II. ANALYSIS

The FLSA requires employers to pay overtime to certain employees who work more than 40 hours in a

work week. 29 U.S.C. § 207(a). The employee bears the burden of proving that she performed overtime work for which she was not properly compensated. *Anderson v. Mt. Clemens*, 328 U.S. 680, 686-87 (1946), *superseded on other grounds by statute*, Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251-262. The employer bears the burden to establish that an exemption from the FLSA applies. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974); *Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 370 (7th Cir. 2005). We review the district court's entry of summary judgment de novo, construing all facts and inferences in the light most favorable to the non-moving party. *Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 432 (7th Cir. 2005).

### A. Kellar's Pre-Shift Activity Was Non-Preliminary Work

The district court found that Kellar's pre-shift activities were non-compensable "preliminary" activities under the Portal-to-Portal Act of 1947. The Portal-to-Portal Act, in relevant part, amended the FLSA to eliminate employer liability "on account of . . . activities which are preliminary to or postliminary to [principal activities,] which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal [activities]." 29 U.S.C. § 254(a). As a threshold matter, Kellar contends that it was improper for the district court to have considered whether her activities were "preliminary" because

Summit did not make that argument in its motion for summary judgment.

A district court may enter summary judgment sua sponte on an issue not explicitly argued if the losing party is on notice that she has to come forward with all of her evidence. *See Acequia, Inc. v. Prudential Ins. Co. of Am.*, 226 F.3d 798, 807 (7th Cir. 2000). We agree with Kellar that she was not "on notice" that the district court would consider whether her activities were "preliminary." In its motion for summary judgment, Summit only argued that it did not know that Kellar was working overtime and that Kellar's pre-shift work was *de minimis*. Summit cited the Portal-to-Portal Act, but it did not contend that Kellar's activities were "preliminary." And the court did not apprise Kellar, before it issued its order, that it was considering whether Kellar's activities were preliminary.

Kellar, however, does not argue that she would have come forward with additional evidence had the court given her notice. Instead, she seems to be arguing that she was not given the opportunity to present argument to the court. While we agree with Kellar that the court should have given her notice and an opportunity to brief the issue, "reversal is not required in every instance of procedural shortfall. Instead, a litigant . . . must show that notice and an opportunity to respond would have mattered." *See Alioto v. Marshall Field's & Co.*, 77 F.3d 934, 936 (7th Cir. 1996). Because at this juncture the parties have presented all of their evidence, and Kellar has now had the opportunity to argue her case to

us, we shall consider whether the court erred in finding that the Portal-to-Portal Act bars recovery in this case.

The Portal-to-Portal Act provides that activities that are "preliminary" to principal activities are not compensable. The Act does not purport to define "preliminary" activities further. But the Supreme Court has held that activities that are "an integral and indispensable part of [an employee's] principal activities," are not "preliminary," but are also "principal activities," and are compensable even if they occur before the beginning of an employee's shift. *See Steiner v. Mitchell*, 350 U.S. 247, 253, 256 (1956).

Kellar testified that she began her day (after unlocking doors and making coffee for employees) reviewing work schedules and gathering and distributing fabric and materials to her subordinates' workstations. Such activities are surely "integral and indispensable" to the work that Kellar performed in her capacity as a sewing manager, such as supplying sewers with their sewing products, tracking supplies, and making sure that work was completed on schedule. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 33 (2005) (activities which are "integral and indispensable" to "principal activities" are themselves "principal activities"). Work activities that Kellar performed afterward would be covered by the "continuous workday rule," which provides that the Portal-to-Portal Act does not apply "to the extent that activities engaged in by an employee occur after the employee commences to perform the first principal activity on a particular workday." 29 C.F.R. § 790.6(a); *IBP,* 546 U.S. at 29.

The district court reached a different conclusion because it credited Mamie Spice's affidavit to the effect that Spice and Kellar spent their pre-shift time socializing instead of working. The court acknowledged that Kellar's deposition testimony directly contradicted Spice's affidavit, but it did not accept Kellar's version of the events in question because Kellar "offer[ed] no evidence other than her own testimony to support her argument." This was error. Absent a finding, not made here, that the usual requirements for evidence at the summary judgment stage were not met, evidence presented in a "self-serving" affidavit or deposition is enough to thwart a summary judgment motion. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003). Kellar's deposition testimony created a factual dispute, and the court was not free to resolve it in Summit's favor. *See McAllister v. Price*, 615 F.3d 877, 884 n.1 (7th Cir. 2010) ("Given the evidence on both sides, [there] are factual disputes [that are] not amenable to resolution on summary judgment.").

On appeal, Summit argues that the district court properly disregarded Kellar's testimony because it was inconsistent and conclusory. But Kellar discussed her pre-shift activities in a fair amount of detail. And any inconsistencies in her testimony were minor. For example, Summit faults Kellar for first testifying that she regularly arrived between 30 and 45 minutes before her shift, but then acknowledging that she also sometimes arrived 15 minutes early and sometimes arrived late. There is no serious inconsistency in this testimony. Kellar worked for Summit for eight years. It is under-

standable that she would have arrived late on some occasions during her eight-year tenure. When Kellar was confronted with the possibility that she might have arrived later on some occasions, she corrected herself. This correction does not necessarily mean that she was lying, nor that it was proper for the district court to disregard the rest of her testimony about working before her shift.

Summit also contends that even if the court erred in discrediting Kellar's testimony, it correctly found that the Portal-to-Portal Act applies because Kellar performed her pre-shift activities primarily for her "own convenience." Summit points to Kellar's deposition testimony in which she stated that she arrived early because it would be a "hassle" to show up at 5:00 a.m. and get her subordinates up and running close to the start of their 5:00 a.m. work shifts.

The Portal-to-Portal Act exempts those activities that are "predominantly . . . spent in [the employee's] own interests," meaning those activities that are undertaken "for [the employee's] own convenience, not being required by the employer and not being necessary for the performance of [the employee's] duties for the employer." *Dunlop v. City Electric, Inc.*, 527 F.2d 394, 398 (5th Cir. 1976); *see also* 29 C.F.R. § 790.8(c) (pre-shift activities undertaken primarily for the employee's convenience are preliminary or postliminary). The Portal-to-Portal Act, however, does not relieve employers from liability for any work of consequence performed for an employer from which the employer derives significant benefit. *Dunlop*, 527 F.2d at 399.

Here, Summit conceded for purposes of its motion for summary judgment that Kellar performed pre-shift "work."[1] That concession forecloses Summit's argument. "Work" is "exertion . . . pursued necessarily and primarily for the benefit of the employer."[2] *See IBP*, 546 U.S. at 25. Therefore, by definition, "work" is performed not for the employee's "convenience," but for the employer's benefit. Kellar's subjective reasons for arriving early simply do not matter for purposes of determining whether her pre-shift activities primarily benefitted her or Summit. *See* 29 C.F.R. § 785.11 ("[A]n employee may voluntarily continue to work at the end of the shift [for many reasons] . . . . The reason is immaterial . . . . [T]he time is working time."); *see also Dunlop,* 527 F.2d at 400 n.11 ("The fact that the employees too may have benefited . . . is not inconsistent with the conclusion that the work was an integral and indispensable function of the defendant business.").

---

[1] In its motion Summit stated: "[F]or the purpose of this Motion only, Summit Seating will assume that Plaintiff performed the tasks and that those tasks were 'work' under the FLSA."

[2] Exertion is not in fact necessary for an activity to constitute "work" because an employer may hire an employee "to do nothing, or to do nothing but wait for something to happen." *Id.*

**B. Kellar's Pre-Shift Work Was Not *De Minimis***

The *de minimis* doctrine allows employers to disregard otherwise compensable work when only a few seconds or minutes of work beyond the scheduled working hours are in dispute. *Singh v. City of New York,* 524 F.3d 361, 370 (2d Cir. 2008). Summit bears the burden to show that the *de minimis* doctrine applies. *See Frank v. Wilson & Co., Inc.*, 172 F.2d 712, 715 (7th Cir. 1949) (characterizing the *de minimis* doctrine as a defense); *Spoerle v. Kraft Foods Global, Inc.*, 527 F. Supp. 2d 860, 868 (W.D. Wis. 2007) (explaining that because defendant sought to rely on the *de minimis* exception, the defendant had the burden of proof).

When evaluating whether work performed by an employee is *de minimis*, courts typically consider the amount of time spent on the extra work, the practical administrative difficulties of recording additional time, the regularity with which the additional work is performed, and the aggregate amount of compensable time. *Lindow v. United States*, 738 F.2d 1057, 1062-63 (9th Cir. 1984); *see also* 29 C.F.R. § 785.47 ("In recording working time . . . insubstantial . . . periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded. . . . This rule applies only where there are uncertain . . . periods of time involved of a few seconds or minutes in duration, and where the failure to count such time is due to considerations justified by industrial realities. . . .").

Summit contends that Kellar's work was *de minimis* in large part because it would have been administratively

difficult to determine how much of Kellar's pre-shift time is compensable. There is some merit to this argument. *See Lindow* 738 F.2d at 1062 ("The *de minimis* rule is concerned with the practical administrative difficulty of recording small amounts of time for payroll purposes."). Kellar's time cards do not indicate which tasks Kellar performed or for how long. Some of the activities she performed, such as making coffee and taking a smoking break, may not be compensable, while others, such as distributing fabric and preparing schedules, likely would be. But these were not insurmountable hurdles. Since Kellar testified that she typically performed the same kinds of activities every day, it would have been possible to compute how much time Kellar spent on compensable activities. *Cf. Lindow*, 738 F.2d at 1064 (concluding that plaintiffs' claim was *de minimis* "because of the administrative difficulty of recording the time and the *irregularity* of the additional pre-shift work" (emphasis added)).

Moreover, at least as claimed, the amount of pre-shift work at issue here, both per day and in the aggregate, is substantial. Kellar testified that she worked between 15 and 45 minutes before her shift, excluding a 5-minute break. She contends that she spent between 10 and 40 minutes working every day before her shift. Summit does not point to any cases that have found that work exceeding between 10 and 15 minutes in duration is *de minimis*. *Cf. id* at 1054 ("Most courts have found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable.") (citing cases). Kellar's pre-shift work would therefore not be *de minimis* under FLSA law.

### C.  Summit's Lack of Knowledge

Although Kellar's work activities were neither preliminary nor *de minimis*, her claimed work is nevertheless non-compensable. To state a claim under the FLSA, Kellar must show that Summit had actual or constructive knowledge of her overtime work. *See Reich v. U.S. Dep't of Conservation & Natural Res., State of Ala.*, 28 F.3d 1076, 1082 (11th Cir. 1994). The district court found that Summit neither knew nor should have known, that Kellar was working overtime. We agree.

The FLSA imposes an obligation on the employer "to exercise its control and see that work is not performed if it does not want it to be performed." *See* 29 C.F.R. § 785.13. The employer "cannot sit back and accept the benefits without compensating for them." *Id*. "[The employer's] duty arises even where the employer has not requested the overtime be performed or does not desire the employee to work, or where the employee fails to report his overtime hours." *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 288 (2d Cir. 2008). The mere promulgation of a rule against overtime work is not enough. 29 C.F.R. § 785.13. Nor does the fact that the employee performed the work voluntarily necessarily take her claim outside of the FLSA. 29 C.F.R. § 785.11.

However, the FLSA stops short of requiring the employer to pay for work it did not know about, and had no reason to know about. *See* 29 U.S.C. § 203(g) ("'Employ' includes to suffer or permit to work."); *Reich*, 28 F.3d at 1082 ("[A]n employer's knowledge is measured in accordance with his duty . . . to inquire into the condi-

tions prevailing in his business. . . . [A] court need only inquire whether . . . [the employer] had the opportunity through reasonable diligence to acquire knowledge." (internal quotation marks and citations omitted)); 29 C.F.R. § 785.11 ("The employer knows or has reason to believe that he is continuing to work.").

Kellar points to her time cards, which reflect that she clocked in early, and argues that Summit should have known that she was performing pre-shift work. But Kellar's clocking in early would not necessarily have alerted Summit that Kellar was performing pre-shift work. *See* 29 C.F.R. § 785.48 (employees who clock in early do not have to be paid so long as they are not working). Kellar conceded that most Summit employees were in the habit of punching in early and then socializing until their work shifts began. Nothing in the record suggests that Ray and Sue Fink, who were aware of this practice and who arrived several hours after everybody else, had reason to believe that Kellar was arriving early in order to work. *Cf. Chao*, 514 F.3d at 280, 286-88 (nurses did not tell employer ahead of time that they were working overtime, but the employer had notice because it was aware that the nurses often worked overtime and the nurses reported the overtime in their time sheets).

We recognize that "an employer is not relieved of the duty to inquire into the conditions prevailing in his business because the extent of the business may preclude his personal supervision." *Reich*, 28 F.3d at 1083 (internal quotation marks and citation omitted). But in this case,

the Finks had no reason to suspect Kellar was acting contrary to the conditions prevailing in their business generally. Kellar's behavior raised no flags. When Kellar forgot to punch in, she would simply write in her time card that she arrived at the beginning of her scheduled work shift. Over the course of eight years, Kellar never told the Finks that she was working overtime. Indeed, there is no indication that anyone else knew Kellar was performing pre-shift work.

On the contrary, every week, Summit's management had meetings to discuss the following week's schedule. Kellar, who was herself a manager, never mentioned during any of those meetings that she was working before her shift began or that she was not being properly compensated, even though she claims to have had a good relationship with the Finks. Kellar was also aware of Summit's policy prohibiting overtime work absent express permission—once, she even reprimanded another employee for clocking in early.

Given these circumstances, the Finks had little reason to know, or even suspect, Kellar was acting in direct contradiction of a company policy and practice that she herself was partially responsible for enforcing. Accordingly, no reasonable trier of fact could conclude that Summit had reason to know that Kellar was working before her shift, and the district court must be affirmed.

### D.  Failure of Kellar's Indiana's Wage Payment Claim

Kellar concedes that her state law claim under Indiana's Wage Payment Statute ("IWPS") is derivative

of her FLSA claim. *See Gehbauer v. Emas, Inc.*, 679 N.E.2d 1374, 1376-77 (Ind. Ct. App. 1997). The only difference between the two claims in this case is that Kellar's FLSA claim seeks damages for unpaid hours worked over 40 hours in each workweek, while her IWPS claim seeks damages for unpaid, pre-shift hours for those workweeks during which she worked less than 40 hours and for which the FLSA would not provide compensation. Because we have concluded that Summit is entitled to summary judgment on Kellar's FLSA claim, we conclude that Kellar's IWPS claim fails too.

## III.  CONCLUSION

The judgment of the district court is AFFIRMED.