POSNER, Circuit Judge.
The plaintiffs are employed in a poultry processing plant in Chicago owned by the defendants, affiliated corporations that we’ll call “the employer.” The plaintiffs advance two claims: a claim by the two plaintiffs, suing jointly, that the employer has violated an overtime provision of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq.; and a class action claim (supplemental to the federal claim, see 28 U.S.C. § 1367(a)), made by the plaintiffs as the representatives of the class, that the employer’s conduct violates an overtime provision of the Illinois Minimum Wage Law, 820 ILCS 105/1 et seq. The federal law does not preempt the state law if the latter is more generous to employees, see 29 U.S.C. § 218(a); Spoerle v. Kraft Foods Global, Inc., 614 F.3d 427, 428-30 (7th Cir.2010), so even if we decide that the employer has not violated the federal law, we can find that it has violated the state law. The district judge granted summary judgment in favor of the employer on both claims, and having done so dismissed the plaintiffs’ motion to certify a class with respect to the state-law claim. One might have expected the employer to press for certification, in order to preclude a further identical suit by others of its employees, see Randall v. Rolls Royce Corp., 637 F.3d 818, 820-21 (7th Cir.2011); but it did not.
The employees in question are line workers represented by a union — Chicago Joint Board, RWDSU (Retail, Whole sale and Department Store Union), http:// rwdsu.info/about.htm (visited March 13, 2014, as were the other websites cited in this opinion) — that has a collective bargaining agreement with the employer. The line workers stand next to a conveyor belt and each worker performs various operations on chicken carcasses, such as deboning and evisceration, as each carcass, carried on the moving belt, arrives in front of him or her. For a comprehensive description of the process, see Tony Ash-down, “Poultry Processing,” www.ilo.org/ safework — bookshelf/english? content & nd=857170833; see also Kimberly Kindy, “Fight Picks Up Over Proposal to Speed Poultry-Processing Lines,” Wash. Post, Feb. 28, 2014, p. A3.
For obvious reasons, “rigid sanitation requirements must be met.” Ash-down, supra. So before beginning work in the morning the line workers are required to put on a sterilized jacket, plastic apron, cut-resistant gloves, plastic sleeves, earplugs, and a hairnet. They are required to remove this sanitary gear at the start of their half-hour lunch break and put it back on before returning to work. They are also told to wash their hands before eating, but given the nature of poultry processing *839 would doubtless do it without being told to. The principal issue in the case, and the only one presented by the federal claim, is whether the time spent in changing during the lunch break is worktime that must be compensated. It’s called “changing,” so we’ll call it that too, but the term is imprecise. The workers do not change out of their clothes; they place the sanitary gear on top of their street clothes, and remove it.
The time the workers spend changing before and after eating lunch is time taken out of their lunch break rather than out of the four-hour shifts that precede and follow it. It thus leaves them with less time for actually eating. But compression of their eating time is not a concern that motivates the workers’ suit; that it is not implies of course that the amount of time consumed in changing is indeed slight, as is further implied by the fact, that the plaintiffs don’t argue that the meal break is not a bona fide meal break. Were it not bona fide, they would be entitled to be paid for all thirty minutes. Since it’s conceded to be bona fide, it is not worktime, 29 C.F.R. § 785.19(a) (“bona fide meal periods are not worktime”) — that is, time that the employer is required to compensate employees for even if (as in this case) there is a collective bargaining agreement between the employer and the employees’ union and the agreement does not require such compensation. 29 C.F.R. § 778.223. The plaintiffs argue nevertheless that federal and state law requires that this changing time be compensated — and at 1.5 times the employees’ regular wage because it is on top of their 40-hour weekly worktime and thus is overtime — even though the collective bargaining agreement makes the entire meal period noncompensable and the Fair Labor Standards Act does not require that meal periods be compensated.
The Act further excludes from the time during which an employee is entitled to be compensated at the minimum hourly wage (or, if it is overtime work, at 150 percent of the employee’s regular hourly wage) “any time spent in changing clothes at the beginning or end of each workday which was excluded from measured working time ... by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.” 29 U.S.C. § 203(o). The phrase we’ve italicized is the bone of contention over the applicability of section 203(o) to this case. The lunch break does not take place at the beginning or end of the period in which the employees are at the plant, and the plaintiffs contend that only that period is the “workday.”
An initial doubt is whether that interpretation can possibly be correct given that many workers work (whether sometimes or only) at night. Nightworkers are called “shift workers” and are estimated to comprise 20 percent of the American workforce. See Sloan Work and Family Research Network, “Questions and Answers About Shift Work,” http:// workfamily.sas.upenn.edu/sites/workfamily. sas.upenn.edu/files/imported/pdfs/ shiftwork.pdf. A busy factory might have three eight-hour shifts, such as 8 a.m. to 4 p.m., 4 p.m. to midnight, and midnight to 8 a.m. These workers have a “workday,” but it begins or ends at night (sometimes both). It would be called their “work-night” were there such a word, but because there isn’t, “workday” has acquired two meanings: a day on which work is performed, and “the period of time in a day during which work is performed.” “Workday,” Merriam-Webster, www. merriam-webster.com/dictionary/workday. Workers given a half-hour lunch or other meal break from work are in effect working two four-hour workdays in an eight- and-a-half-hour period.
*840 It would make no practical sense to draw the distinction urged by the plaintiffs. An eight-hour workday is standard. If the job requires changing at the beginning and end of the workday, and the time spent changing has to be compensated, the eight-hour workday becomes an eight-hour + some-minutes workday and so the employer has to pay overtime. Since changing time isn’t working time, a union may decide not to press the employer to pay the workers for that time. That forbearance is likely to be mutually attractive because it avoids the bother of having to keep track of how long the changing takes (and it will differ for each worker) in order to determine what each worker is owed for that time. Hence the optional exemption in section 203(o).
If as we believe “workday” includes “worknight,” it may also include four-hour shifts separated by meal breaks. It is true that a regulation defines “workday” to mean, “in general, the period between the commencement and completion on the same workday of an employee’s principal activity or activities.” 29 C.F.R. § 790.6(b). But the qualifying phrase “in general” (paraphrased as “generally” in IBP, Inc. v. Alvarez, 546 U.S. 21, 29, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005)) allows room for an exception; and there is compelling reason to recognize an exception in this case. (It is noteworthy that section 203(o) does not mention meal breaks, hence does not consider the effect they may have on a practical definition of “workday.”) The identical considerations attend payment for time changing at the beginning and end of a meal break as at the beginning and end of either a conventional “workday” or the lexicographically challenged “worknight.”
Still another reason to interpret “workday” in this manner is that the Fair Labor Standards Act does not require employers to provide meal breaks at all. Whether to provide them is left up to collective bargaining if as in this case the workplace is unionized. And if they are provided, then as long as they’re “bona fide,” the time they take doesn’t have to be compensated. 29 C.F.R. § 785.19. The regulation gives, as an example of a meal break that is not bona fide, when “a factory worker who is required to be at his machine is working while eating.” The plaintiffs in this case do not argue that their lunch break is not bona fide.
As the Supreme Court pointed out recently in a related context, “simply put, [section 203(o) ] provides that the com-pensability of time spent changing clothes or washing is a subject appropriately committed to collective bargaining.” Sandifer v. U.S. Steel Corp., — U.S. -, 134 S.Ct. 870, 876, 187 L.Ed.2d 729 (2014). To interpret section 203(o) narrowly dis-serves the interest of workers by narrowing the scope of collective bargaining and, as in this case, setting a group of workers against their union. There are good practical reasons why the union in this case did not negotiate for making the time compen-sable. To determine how much overtime pay was owed for changing during the lunch break, the employer would have to keep tabs on how long it takes each employee to change. Unless the employer both fixed a rigid outer limit for time spent changing and monitored compliance with that limit, employees would have an incentive to dawdle at changing in order to increase their wage — which remember is an overtime wage.
These complications would be avoided if time spent during the meal break in actually eating also had to be compensated. For then the employer would know he had to pay every employee one-half hour of overtime wage in addition to eight hours of the employee’s regular wage. But we *841 know that meal time does not have to be compensated. On the basis of the regulation cited earlier that excludes bona fide meal periods from worktime for which workers are required to be paid, the Fourth Circuit has held in a case indistinguishable from this one that “the time [employees] spend during their lunch breaks donning and doffing a few items [i.e., changing clothes], washing, and walking to and from the cafeteria ... is non-compensable ... because it is part of a bona fide meal period, see 29 C.F.R. § 785.19 ..., and, in the alternative, de minimis.” Sepulveda v. Allen Family Foods, Inc., 591 F.3d 209, 216 n. 4 (4th Cir.2009).
Sepulveda actually offers two grounds alternative to our interpretation of “workday” for excluding the donning and doffing time in this case from the overtime provision of the Fair Labor Standards Act. We have been assuming thus far that that time is expended at the beginning and end of the (four-hour) workday. But in an equally valid sense it is expended during the lunch break itself. For the exclusion of mealtime from worktime is not exclusion of just the time spent eating — it is the entire “meal period,” which we know is 30 minutes. It is excluded as long as it is bona fide, and, as we said, the plaintiffs don’t deny that the lunch break at issue in this case is bona fide. If so, all 30 minutes, including changing time, are excluded from worktime and therefore need not be compensated.
The Sepulveda opinion’s other alternative ground for affirmance is unrelated to the meaning of “workday” or even of “meal periods.” This is the familiar legal doctrine de minimis non curat lex — the law doesn’t care about trifles (the punchier version is aquila non capit muscas — an eagle doesn’t catch flies). The doctrine figured in our opinion in Sandifer v. U.S. Steel Corp., 678 F.3d 590, 593 (7th Cir.2012), affirmed, — U.S. -, 134 S.Ct. 870, 187 L.Ed.2d 729 (2014). The issue was whether the exemption permitted by section 203(o) if agreed to by the parties to a collective bargaining agreement was vitiated by the fact that, in addition to putting on and taking off clothes, the workers had to put on and take off protective equipment, which is not clothing and so is not within the scope of the exemption. Quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 692, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), we said that “split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved.” 678 F.3d at 593.
That remark was consistent with the suggestion in Hessel v. O’Hearn, 977 F.2d 299, 304 (7th Cir.1992), that “the maxim de minimis non curat lex is often, perhaps typically, used ... to denote types of harm, often but not always trivial, for which the courts do not think a legal remedy should be provided.” One reason to withhold a remedy is that the harm is small but measuring it for purposes of calculating a remedy would be difficult, time-consuming, and uncertain, hence not worthwhile given that smallness. It is inconceivable that “a substantial measure” of the poultry workers’ “time and effort” is consumed in changing during the lunch break. The plaintiffs say it takes 10-15 minutes during the lunch break for them to change out of and then into the protective clothing; the company says 2-3 minutes. These time estimates do not include time spent walking to and from the lunch room; the plaintiffs’ statement of facts limits the 10-15 minute estimate to the two clothing changes required during the lunch break.
*842 The district judge did not opine on how long the donning and doffing take, a question difficult to answer in the usual way of judicial fact determination. The plaintiffs would testify that it takes 10 to 15 minutes, the employer that it takes only 2 to 3 minutes, and how would a judge or jury know who was telling the truth? The plaintiffs could be filmed changing, but their incentive would be to dawdle; the company could doubtless find a few speed demons among the workers. The limitations of the trial process as a method of finding certain types of fact must be recognized.
One of us decided to experiment with a novel approach. It involved first identifying the clothing/equipment that the defendant’s plants use and buying it (it is inexpensive) from the supplier. Upon arrival of the clothing/equipment three members of the court’s staff donned/doffed it as they would do if they were workers at the plant. Their endeavors were videotaped. The videotape automatically recorded the time consumed in donning and doffing and also enabled verification that the “workers” were neither rushing nor dawdling. The videotape reveals that the average time it takes to remove the clothing/equipment is 15 seconds and the average time to put it on is 95 seconds. The total, 110 seconds, is less than two minutes, even though the “actors” had never worked in a poultry processing plant and were therefore inexperienced donners/doffers of the items in question.
This was not “evidence” — the intention was to satisfy curiosity rather than to engage in appellate factfinding — but it is information that confirms the common sense intuition that donning and doffing a few simple pieces of clothing and equipment do not eat up half the lunch break. (If it did, the lunch break might well not be bona fide; but as we said the plaintiffs do not argue that it is not bona fide.) The intuition is compelling; no reasonable jury could find that workers spend half their lunch break taking off and putting on a lab coat, an apron, a hairnet, plastic sleeves, earplugs, and gloves. What a reasonable jury could not find does not create a triable issue of fact.
Regarding the propriety of visual imagery in a judicial opinion, we note the Supreme Court’s reference in a footnote in its Sandifer opinion to a photograph in our opinion. The Court (which affirmed our decision unanimously) said: “the opinion of the Court of Appeals provides a photograph of a male model wearing the jacket, pants, hardhat, snood, gloves, boots, and glasses. 678 F.3d at 593.” 134 S.Ct. at 874 n. 2. There is no note of disapproval, even though the photograph was not in evidence.
Common sense has a place in adjudication. What could be more absurd than to require as a matter of interpretation of the Fair Labor Standards Act that donning and doffing times during lunch breaks be measured daily for each poultry worker for purposes of calculating overtime pay (a modest fraction of an hour’s wage) due each worker twice every day? For the employer to try to quantify that time, across numerous employees and numerous days of work, other than by statistical sampling methods suggested by neither side in this case, would be an undertaking at once onerous and futile. Nor is having to change inconsistent with the plaintiffs’ having been “completely relieved from duty” during their lunch break, 29 C.F.R. § 785.19(a), considering how remote from this simple changing are the “duties” listed in the regulation: “an office employee who is required to eat at his desk or a factory worker who is required to be at his machine.”
*843 We are mindful of the Supreme Court’s statement in San difer that “a de minimis doctrine does not fit comfortably within the statute at issue here, which, it can fairly be said, is all about trifles — the relatively insignificant periods of time in which employees wash up and put on various items of clothing needed for their jobs. Or to put it in the context of the present case, there is no more reason to disregard the minute or so necessary to put on glasses, earplugs, and respirators, than there is to regard the minute or so necessary to put on a snood. If the statute in question requires courts to select among trifles, de minimis non curat lex is not Latin for close enough for government tuork.” Sandifer v. U.S. Steel Corp., supra, 184 S.Ct. at 880 (emphases in original). But reading on we discover that by another route the Court reached either the same result that we, and likewise the Fourth Circuit in Sepulveda, had reached, or a result that allows greater latitude for collective bargaining than the de minimis doctrine. The Court restated the issue as “whether the period at issue can, on the whole, be fairly characterized as ‘time spent in changing clothes or washing.’ If an employee devotes the vast majority of the time in question to putting on and off equipment or other non-clothes items (perhaps a diver’s suit and tank) the entire period would not qualify as ‘time spent in changing clothes’ under § 203(o), even if some clothes items were donned and doffed as well. But if the vast majority of the time is spent in donning and doffing ‘clothes’ ... the entire period qualifies, and the time spent putting on and off other items need not be subtracted.” Id. at 881 (emphasis in original). The poultry workers in our case do not spend the “vast majority of the time” during their lunch breaks donning and doffing.
The Supreme Court said that it “agree[d] with the basic perception of the Courts of Appeals [which is to say, the Fourth and Seventh Circuits] that it is most unlikely Congress meant § 203(o) to convert federal judges into time-study professionals. That is especially so since the consequence of dispensing with the intricate exercise of separating the minutes spent changing clothes from the minutes devoted to other activities is not to prevent compensation for the uncovered segments, but merely to leave the issue of compensation to the process of collective bargaining. We think it is possible to give the text of § 203(o) a meaning that avoids such relatively inconsequential judicial involvement in ‘a morass of difficult, fact-specific determinations,’ Sepulveda, 591 F.3d at 218.... In the present case, the District Court stated that ‘the time expended by each employee donning and doffing’ safety glasses and earplugs ‘is minimal,’ ... a conclusion with which the Seventh Circuit agreed.” 134 S.Ct. at 881. And the Supreme Court affirmed. (Notice the Court’s favorable citation of Sepulveda, a decision on which we rely in this case.)
The Latin word “minimis ” means “minimal things,” but the usual legal translation of “de minimis non curat lex ” is that the law doesn’t concern itself with “trifles.” The word “minimal” is less dismissive, and notice that the Court in the passage we just quoted speaks of avoiding “relatively inconsequential judicial involvement in ‘a morass of difficult, fact-specific determinations.’” That is an exact description of a court’s determining the changing time spent by the different poultry workers on different days, rather than leaving it to the union to decide to negotiate in lieu of the monitoring and incessant disagreement that such a measurement process would require to implement an alternative form of compensation. No way the workers would come out ahead by prevailing in this class action suit.
*844 We turn now to the claim based on Illinois’s minimum wage statute. That statute fixes a minimum hourly wage and requires overtime pay for employees who have “a work week of more than 40 hours.” 820 ILCS 105/4(a)(l), 4a(l). The statute doesn’t say “hour” or “hours” of what, and contains no counterpart to section 203(o) of the federal law. But it authorizes the Director of the Illinois Department of Labor to make administrative regulations “including definitions of terms, as he deems appropriate to carry out the purposes of’ the minimum wage law. 820 ILCS 105/10(a). Pursuant to this authorization the Director in 1984 promulgated a regulation which states that “ ‘hours worked’ means all the time an employee is required to be on duty, or on the employer’s premises, or at other prescribed places of work, and any additional time he or she is required or permitted to work for the employer.” 56 Ill. Admin. Code § 210.110. That’s broad, and standing alone would encompass time spent changing during a meal break, because that can be done only on the employer’s premises. But there is more to the regulation. A 1995 addition states that “an employee’s meal periods ... are compensable hours worked when such time is spent predominantly for the benefit of the employer, rather than for the employee.” The first part of section 210.110 that we quoted is worded almost identically to the “hours worked” federal regulation, 29 C.F.R. § 778.223; the second part parallels the other federal regulation that we cited, 29 C.F.R. § 785.19(a), by taking bona fide meal time out of work-time. The single Illinois regulation covers the same ground as the two federal regulations, though with a useful clarification, as we’re about to see.
The employees in this case can leave the plant during their lunch break and grab a bite at a nearby restaurant, but they have to be on the employer’s premises when changing. It doesn’t follow that the time taken for the meal break is predominantly for the employer’s benefit rather than the employee’s. Cf. Barefield v. Village of Winnetka, 81 F.3d 704, 710 (7th Cir.1996). On the contrary, the employer does not provide a meal break so that the employees can don and doff protective clothes and equipment, but so that they don’t have to work eight hours straight without food. The meal break is for the employees’ benefit. The clothes changing is incidental to their eating lunch.
The predominance test is related to the de minimis doctrine, but it is part of the regulation rather than a common law add-on (de minimis non curat lex is a common law doctrine, both state and federal). But the common law add-on is part of Illinois labor law as well. In Porter v. Kraft Foods Global, Inc., 2012 WL 7051311, at *9 (Ill.App. Dec. 10, 2012), the Illinois Appellate Court, relying on our Sandifer opinion, applied the de minimis doctrine to the small amounts of time that workers in Porter took to don and doff protective equipment at the beginning and end of their workday. There is no mention in the opinion of a collective bargaining agreement between the parties. Remember that section 203(o) of the federal Act allows certain on-premises time to be exempted from the Act’s minimum wage and overtime provisions only if a collective bargaining agreement so provides — and section 203(o) doesn’t have a counterpart in the Illinois law. But to dwell on these differences is to miss the independent force of the de minimis doctrine (or the alternative preferred by the Supreme Court — “minimal”—not that its preference would bind the Illinois courts or regulators when dealing with an Illinois statute or regulation).
It was not argued in Sandifer that the clothes-changing time involved in that case was de minimis. The exclusion of that *845 time from hours worked was based on a provision of the collective bargaining agreement authorized by section 203(o) of the Fair Labor Standards Act. The argument, which earned the day, was that the protective equipment that the workers had to put on and take off in addition to putting on and taking off their work clothes was de minimis. There is similarly no argument in this case that the meal breaks are de minimis; under both the state and federal statutes they are not work time at all, just as the clothes-changing time in Sandifer was, by virtue of the collective bargaining agreement and section 203(o), not work time. The question under Illinois law is whether the time spent during the half-hour meal break in changing clothes, corresponding to putting on and taking off the protective equipment in Sandifer, is de minimis.
Remember that what the parties call changing clothes in this case is not dressing and undressing — that is, changing from street clothes into work clothes and upon ending work changing back again— but rather is placing several items of protective clothing or equipment on top of the employee’s street clothes (or in or on his person rather than on his street clothes, in the case of the earplugs and hairnet) and later removing them. If these actions took a big chunk of time, leaving inadequate time for eating without getting indigestion, the meal break would no longer be bona fide. But that is not argued. For us to rule that a few minutes of changing time must be compensated would put us in the role that the Supreme Court derided — that of playing at being “time-study professionals.” The pertinence of “practical administrative difficulties” in calculating the duration of an activity “for payroll purposes” was noted by the Illinois Appellate Court in Bartoszewski v. Village of Fox Lake, 269 Ill.App.3d 978, 207 Ill.Dec. 360, 647 N.E.2d 591, 596 (1995), a case that, incidentally, characterized “the Federal case law” as “instructive” in interpreting the Illinois law. Id., 207 Ill.Dec. 360, 647 N.E.2d at 594.
Never to our knowledge has either the Director’s regulation been held to require compensation for changing time at the beginning and end of meal breaks, or the provision in a collective bargaining agreement excluding meal breaks from compen-sable time been challenged. The absence of any enforcement of the interpretation advocated by the plaintiffs in this case is telling evidence of how the Illinois law is understood by Illinois judges, lawyers, and labor officials. The Porter decision signals that the de minimis rule is alive and well in Illinois’s law of employee compensation, and the rule is amplified by the predominance test in the regulation. And there is nothing to suggest that the Illinois Appellate Court in Porter thought it was creating new law. We would expect that had it thought that, it would have published its opinion. And we have no reason to think that the state’s highest court would disagree with Porter — it denied Porter’s petition to appeal the Illinois Appellate Court’s decision to it. 368 Ill.Dec. 737, 985 N.E.2d 310 (2013) (per curiam).
There is a benefit, in simplified labor relations, from a degree of convergence of federal and state law in regard to the scope of exemptions from mandatory provisions of those different bodies of law when both are applicable to the same workforce, as they are in many cases — in this case, for example. As we noted in Driver v. AppleIllinois, LLC, 739 F.3d 1073, 1075 (7th Cir.2014), Illinois courts frequently say that they look to the Fair Labor Standards Act for guidance in interpreting the state’s minimum wage law. Besides the Illinois cases cited in id., see, e.g., Lewis v. Giordano’s Enterprises, Inc., 397 Ill.App.3d 581, 336 Ill.Dec. 884, 921 *846 N.E.2d 740, 745—46 (2009), and Bernardi v. Village of North Pekin, 135 Ill.App.3d 589, 90 Ill.Dec. 394, 482 N.E.2d 101, 102 (1985). The Illinois Department of Labor has said that too. See 56 Ill. Admin. Code § 210.120. Earlier we noted the similarity of the federal and state regulations pertinent to this case.
So far in this opinion we have been discussing just changing time during meal breaks. That is the primary focus of the appeal. But the plaintiffs also argue, though only with respect to their claim under Illinois law, that not only should that time be compensated but likewise the time the workers take to don and doff at the beginning of the morning shift and end of the afternoon shift. But if as we have just ruled the time spent on the identical activity during meal breaks is de minimis (or “minimal” in the Supreme Court’s preferred term), it is even more clearly so when performed at the beginning and end of the workers’ day of work. The amount of time spent on the activity is the same but obviously is a much larger fraction of a 30-minute lunch break than of 8 hours (480 minutes) of work time (16 times larger). If it is de minimis in the first case, it is de minimis a fortiori in the second.
We end this longish opinion with a reminder that the cause of amicable labor-management relations is impaired by reading broadly statutes and regulations that remove wage and hour issues from the scope of collective bargaining. That is what motivated Congress to amend the Fair Labor Standards Act in 1947 to add (among other provisions) what is now section 203(o), stating in 29 U.S.C. § 251 that “Congress finds that the Fair Labor Standards Act of 1938 ... has been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers.” Employer and union in this case have agreed not to count the tiny donningdloffing times as compensated work. Doubtless the union required compensation for that concession to the employer. The plaintiffs in this case are trying to upend the deal struck by their own union.
AFFIRMED.