In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

May 28, 2014

*Before*

DIANE P. WOOD, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 13-2115

ROCHELLE MITCHELL, *et al.*,
individually and on behalf of all
others similarly situated,

          *Plaintiffs-Appellants*,

      *v.*

JCG INDUSTRIES, INC., and
KOCH FOODS, INC.,

          *Defendants-Appellees*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 C 6847 — Robert M. Dow, Jr., *Judge*.

————————————

O R D E R

On April 1, 2014, plaintiffs-appellants filed a petition for re-
hearing and for rehearing *en banc*, and on April 17, 2014, defend-
ants-appellees filed an answer to the petition. A vote of the active
members of the court on whether to grant rehearing *en banc* was
requested and a majority of the judges have voted to deny the pe-
tition.[1]

The petition is therefore DENIED.

---

[1] Chief Judge Wood, Judge Rovner, Judge Williams and Judge Hamilton
voted to grant the petition for rehearing *en banc*.

WILLIAMS, *Circuit Judge*, with whom WOOD, *Chief Judge*, and ROVNER and HAMILTON, *Circuit Judges* join, dissenting from denial of rehearing en banc. This is an important case with far-reaching implications for, among others, workers who are being paid minimum wage or close to it. As set forth in Chief Judge Wood's well-written dissent and also in the petition for rehearing, this case should have been heard en banc because the majority opinion calls into question the application of the "continuous workday" doctrine of the Fair Labor Standards Act ("FLSA"), erroneously applies *de minimis* analysis to the FLSA in contravention of Supreme Court precedent, and improperly applies the summary judgment standard under Federal Rule of Civil Procedure 56.

Under the FLSA, an employer and employee may collectively bargain to make non-compensable "any time spent in changing clothes or washing at the beginning or end of each workday …" 29 U.S.C. § 203(o). Congress adopted section 203(o) with full knowledge of the then-existing Department of Labor definition of "workday" known as the "continuous workday" rule or doctrine—which states that the workday is, "in general, the period between the commencement and completion on the same workday of an employee's principal activity or activities." 29 C.F.R. § 790.6(b); *see Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 875-76 (2014) (describing history of FLSA). Applying reasoning that I believe contravenes the plain language of both the FLSA and the Department of Labor's definition, the majority finds that the employees of the chicken processing plant work not one eight-hour day, but two four-hour workdays broken up by a thirty-minute lunch break. *Mitchell v. JCG Indus., Inc.*, 745 F.3d 837, 840 (7th Cir. 2014). Under the majority's approach, any time spent doffing clothes during the start of the lunch break is actually at the

end of the first four-hour workday, and any time donning clothes at the end of the lunch break is actually at the beginning of the employees' second four-hour workday, and so the donning and doffing during the mid-day lunch break is subject to the collective bargaining agreement under § 203(o). *Id.* The day can be broken up that way, the majority states, because the employees have an unpaid lunch break and that non-compensable period must act as a break between the first workday and the second workday. *Id.* The Department of Labor's "general" definition of a continuous workday does not apply here, the majority continues, because this case presents a "compelling reason to recognize an exception" to the continuous workday doctrine, namely that there are actually two four-hour workdays. *Id.*

Setting aside the specific facts of this case, I have serious concerns about what effect the majority's analysis will have on the "continuous workday" doctrine going forward. Under the doctrine, workers must be compensated for time they spend doing what might otherwise be non-compensable activities if those activities occur during the "period between commencement and completion on the same workday of an employee's principal activity or activities," subject to FLSA carve outs. *IBP, Inc. v. Alvarez,* 546 U.S. 21, 29 (U.S. 2005) (quoting 29 C.F.R. § 790.6(b)). Normally, an employee who commences her first principal activity at 8 a.m., takes a half-hour lunch break from 12-12:30, and completes her principal activity at 4:30 p.m., has worked one continuous workday (8 a.m. – 4:30 p.m.). *Kellar v. Summit Seating Inc.,* 664 F.3d 169, 174 (7th Cir. 2011) (noting "[w]ork activities that Kellar performed after [her first integral and indispensable work activities] would be covered by the 'continuous workday rule'" and  quoting 29 C.F.R. § 790.6); *see also Alvarez v. IBP, Inc.,* 339

F.3d 894, 907 (9th Cir. 2003) (noting the workday is "continuous, not the sum of discrete periods"), *aff'd by IBP, Inc.*, 546 U.S. at 29. She must be compensated for all of that period, except for the *bona fide* lunch break. 29 C.F.R. § 785.19 (excluding *bona fide* lunch breaks from "worktime"). However, based on the majority's analysis, that same employee now has worked two continuous workdays (8 a.m. – 12 p.m. and 12:30 p.m. – 4:30 p.m.), twice commenced her principal activities, and twice completed her principal activities, all between sunrise and sunset. *Mitchell*, 745 F.3d at 840. In other words, whereas before the majority's opinion the employee only had one "beginning [and] end" of the workday that is subject to collective bargaining, now that same employee has two. 29 C.F.R. § 790.6(b). I have great concern that the majority's reasoning will spell the end of the "continuous workday" doctrine, which courts around this circuit have relied upon in deciding cases, and will allow employers to negotiate away otherwise compensable time. *See, e.g., Harris v. Reliable Reports Inc.*, No. 13-cv-210, 2014 U.S. Dist. LEXIS 31223, at *13-14 (N.D. Ind. March 10, 2014) (denying motion to dismiss based on continuous workday doctrine); *Espenscheid v. Directstat USA, LLC*, No. 09-cv-625, 2011 U.S. Dist. LEXIS 154706, at ** 68-70 (W.D. Wis. April 11, 2011) (denying summary judgment on continuous workday FLSA claim). Congress has spoken and decided what should or should not be subject to collective bargaining: those periods donning and doffing at the "beginning or end of each" continuous workday are subject to collective bargaining; those periods during the continuous workday are not. 29 U.S.C. § 203(o). The majority's fracturing of the workday now calls into question the very existence of the "continuous workday" doctrine, since there is nothing continuous about  the workday as the major-

ity describes it. Indeed, this dubious rationale has already been questioned by one federal court. *Abadeer v. Tyson Foods, Inc.*, 09-cv-00125, 2014 U.S. Dist. LEXIS 50528, *46 (M.D. Tenn. April 10, 2014) ("Departing radically from the conventional understanding of 'workday'—in effect since 1947 and approved by the Supreme Court in 2005—*Mitchell* found that the period before a meal break was the end of one 'workday' and the period after a meal break was the start of another."); *see also Castaneda v. JBS USA, LLC*, No. 08-cv-01833, 2014 U.S. Dist. LEXIS 62390, **9-10 (D. Colo. May 6, 2014) (rejecting idea of "two four-hour work days" and therefore not applying 203(o)).

Moreover, by carving out an "exception" to the "general" definition propounded by the Department of Labor, the majority has created an exception to what had previously been the "continuous workday" doctrine's rule, but does nothing to explain when this exception should be applied and when it should not. *Mitchell*, 745 F.3d at 840. Going forward, district courts, employers and employees are likely to be confused as to when a day is continuous and when it is not. When is a seemingly eight-hour workday actually two four-hour workdays, or four two-hour workdays, or eight one-hour workdays? What makes this case the "exception" to the "general" definition, but another case not the "exception"? This "exception" is likely to create confusion in both the administration of law—since district courts are now faced with the Supreme Court precedent adopting the "continuous workday" doctrine, *IBP, Inc.,* 546 U.S. at 29, and precedent by our court rejecting its application—and the collective bargaining process. *See, e.g., Abadeer,* 2014 U.S. Dist. LEXIS 50528, at *46 n.4 (discussing *Mitchell* and stating "[t]his newly discovered 'exception,' then, presumably applies to all un-

ionized shift work that includes a meal break, which is to say nearly all unionized shift work."). Since the application of the "continuous workday" doctrine involves "a question of exceptional importance" and the majority's decision calls into question the "uniformity of the court's decisions"—specifically when the "exception" should apply—I believe this case should have been heard en banc. Fed. R. App. P. 35(a).

Second, the majority holds that its conclusion is supported, in the alternative, by the fact that such donning and doffing is *de minimis* and therefore non-compensable. *Mitchell*, 745 F.3d at 841-843. Yet, as Chief Judge Wood stated in her dissent, as Appellant's petition for rehearing points out, and as the majority itself notes, the Supreme Court has explicitly rejected the idea that donning and doffing "on the whole" can be subject to a *de minimis* analysis. As the Supreme Court stated, 203(o) is "*all about* trifles – the relatively insignificant periods of time in which employees wash up and put on various items of clothing needed for their jobs." *Sandifer*, 134 S. Ct. at 880 (emphasis in original). The majority here accepts this statement, but nonetheless applies the *de minimis* doctrine because it believes the Supreme Court tacitly approved such application. *Mitchell*, 745 F.3d at 841-843. However, this is a misreading of *Sandifer*. In that case, the employees argued that twelve items of clothing were donned and doffed and such time was compensable. *Sandifer*, 134 S. Ct. at 879. The Supreme Court ultimately found that three of the items were not actually clothing. *Id.* at 880. Rather than figure out which portion of the donning and doffing time was compensable and which was not, the Supreme Court wrote off the time putting on and taking off the non-clothing items so long as the entire period "*on the whole*" was "fairly character-

ized as 'time spent in changing clothes or washing.'" *Id.* at 881 (emphasis in original) (quoting § 203(o)). In other words, where there is an intermingling between clothes and non-clothes item during the donning and doffing period, the court need not be a "time study professional[]" and determine which portion relates to clothing and which does not; so long as the period "on the whole" can be characterized as donning and doffing non-clothes, it is compensable. *Id.* at 880. However, this does not change the Supreme Court's statement that the *entire* donning and doffing period cannot be written off as *de minimis* since, as the Court stated, 203(o) is all about such "trifles." *Id.* Yet that is exactly what the majority does, writing off the entire period as *de minimis*. *Mitchell*, 745 F.3d at 843. I am concerned that a district court faced with a donning and doffing case will not know whether it should apply the *de minimis* standard and follow the majority's opinion, or whether it should follow the Supreme Court's precedent. This conflicting precedent creates confusion and will disrupt the "uniformity of the court's decisions," and for that reason, I believe this case should have been heard en banc. Fed. R. App. P. 35(a).

Finally, I believe the majority misapplied the Federal Rule of Civil Procedure 56 summary judgment standard and did not view the evidence in the light most favorable to the non-moving party. *See Chaib v. Indiana*, 744 F.3d 974, 981 (7th Cir. 2014). Rather, the majority discounted an affidavit presented by Appellant that it took her 5-6 minutes to doff (and presumably) the same 5-6 minutes to don the clothing during the lunch break. *See* November 1, 2012 Affidavit of Rochell Mitchell. The majority found the employees' estimate to be "inconceivable." *Mitchell*, 745 F.3d at 841. Taken in the light most favorable to the employees, those 10-12 minutes daily

add up to 50-60 minutes per week. Even if *de minimis* analysis were appropriate here, that is not *de minimis* time. By explicitly rejecting Appellant's affidavit and accepting the employer's time estimation (and confirming that with a court staff "experiment"), the majority ignored the evidence in the light most favorable to the employees and therefore did not conduct the proper Rule 56 analysis. In the light most favorable to Appellant, how long it took to don and doff was an issue of fact that should have been decided by a jury.

For the foregoing reasons, I dissent from denial of rehearing en banc.

POSNER, *Circuit Judge*, concurring in denial of rehearing en banc. Published opinions dissenting from denials of rehearing en banc are rare; published opinions concurring in denials of rehearing en banc are virtually unheard of. But this case merits such an opinion in view of assertions and omissions in the opinion dissenting from the denial of rehearing en banc that relate both to the appropriateness of the case for rehearing by the full court and to the grounds of the panel's decision.

Workers in a poultry processing plant in Chicago, who are represented by a union that has a collective bargaining agreement with their employer, stand next to a conveyor belt and perform various operations, such as deboning, on the chicken carcasses conveyed by the belt. Before beginning work in the morning the workers put on a sterilized jacket, plastic apron, cut-resistant gloves, plastic sleeves, earplugs, and a hairnet. They are required to remove this sanitary

gear, except for the earplugs and hairnet at the start of their half-hour lunch break, and put it back on before returning to work. The issue is whether the time spent in changing during the lunch break is worktime that must be compensated. The panel assigned to this case ruled that the changing time did not have to be compensated. The full court has declined by a split vote to hear the case en banc, precipitating the dissenting opinion that is the focus of my discussion.

It should go without saying that mere disagreement with a decision by a panel of the court is not a sufficient ground for rehearing en banc. Otherwise every case in which the panel was divided could provoke a petition for rehearing en banc and a call by the dissenting judge for a vote on whether to rehear the case en banc. Unremarked by the dissent is that there are standards for granting rehearing en banc, and for obvious reasons they do not include: "I disagree with the panel majority." The Seventh Circuit's Practitioner's Handbook for Appeals states that "'an en banc hearing or rehearing is not favored and ordinarily will not be ordered unless (1) en banc consideration is necessary to secure or maintain uniformity of the court's decision, or (2) the proceeding involves a question of exceptional importance.' Fed. R. App. P. 35(a)." The handbook goes on to state that "rehearings en banc are designed to address issues that affect the integrity of the circuit's law (intra-circuit conflicts) and the development of the law (questions of exceptional importance)." And there is more: Rule 35(b)(1) requires a petition for rehearing en banc to "begin with a statement that either: (A) the panel decision conflicts with a decision of the United States Supreme Court or of the court to which the petition is addressed (with citation to the conflicting case or cases) and consideration by the full court is therefore necessary to se-

cure and maintain uniformity of the court's decisions; or (B) the proceeding involves one or more questions of exceptional importance, each of which must be concisely stated; for example, a petition may assert that a proceeding presents a question of exceptional importance if it involves an issue on which the panel decision conflicts with the authoritative decisions of other United States Courts of Appeals that have addressed the issue." The Advisory Committee's Note to Rule 35 also stresses intercircuit conflict as a basis for rehearing en banc.

None of these criteria for rehearing en banc is satisfied in this case or even mentioned by the dissent. Far from there being either an intracircuit or an intercircuit conflict, a reversal of the panel decision would create a circuit split with the only other appellate decision to deal with the same issue: *Sepulveda v. Allen Family Foods, Inc.*, 591 F.3d 209 (4th Cir. 2009). Reversal also would create deep tensions with our decision in *Sandifer v. U.S. Steel Corp.*, 678 F.3d 590 (7th Cir. 2012), and with the Supreme Court's decision affirming it unanimously, 134 S. Ct. 870 (2014). And rather than the type of dispute between the parties to this case being exceptionally troublesome, such disputes can be and usually are resolved in collective bargaining negotiations without generating litigation. A reversal might disrupt labor relations in a variety of industries, besides poultry processing, by allowing a class action suit to override arrangements agreed upon in collective bargaining agreements. That would be to forget Congress's reasons for amending the Fair Labor Standards Act (under which this suit was brought) in 1947: "Congress finds that the Fair Labor Standards Act … has been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees,

thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers." 29 U.S.C. § 251. We would be upending long-standing practices of the Illinois Department of Labor as well.

A Westlaw search of *Mitchell v. JCG Industries, Inc.*, 745 F.3d 837 (7th Cir. 2014) (the panel decision), reveals three citations to the decision, all of which distinguish it from the citing cases. *Castaneda v. JBS USA, LLC*, 2014 WL 1796707, at *3 (D. Colo. May 6, 2014); *Abadeer v Tyson Foods, Inc.*, 2014 WL 1404836, at *12–13 (M.D. Tenn. Apr. 10, 2014); *Jones v. C & D Technologies, Inc.*, 2014 WL 1233239, at *7 n. 5 (S.D. Ind. Mar. 25, 2014). A Google search reveals a number of references to the panel decision (many critical of the "experiment" conducted by court staff in that case regarding the time it takes to don and doff the sanitary gear that poultry workers are required to wear) but nothing to suggest that the decision involves an issue of general importance. A Google search of "donning and doffing" (and some variant terms suggested at the bottom of the first Google page) revealed only one reference to donning and doffing in the poultry processing industry and nothing to suggest a concern with donning and doffing at meal breaks.

In considering whether a case is appropriate for rehearing en banc, a judge will generally look first at the grounds suggested in the petition. The petition in this case lists two issues that the class action lawyers who drafted it deem worthy of en banc consideration: "1. Does the continuous workday doctrine have an exception that applies to the facts of our case? And if so, what is the exception? 2. Should the Court ignore the opinion of the Illinois Attorney General regarding an interpretation of an Illinois regulation on hours

worked, and instead rely upon an unpublished Illinois decision? Or should the matter be certified to the Illinois Supreme Court?" The dissent does not seek en banc rehearing to resolve the second question. The first is fact-bound. No one can deny that there are exceptions to the continuous workday rule. The question is whether the poultry processing donning/doffing time might be one. So far as appears, that is a question of limited significance.

The petition for rehearing is sloppy. Apart from numerous mistakes, such as its assertion that the poultry workers are minimum wage employees (as pointed out in the appellees' response, they are not—they are paid $9; the Illinois minimum wage is $8.25), the main arguments in the petition were made neither in the district court, nor in this court when the case was briefed and argued to the panel. So there is an ambush element.

The dissent doesn't mention collective bargaining. That is a critical omission. The income of the poultry processing workers will be determined by collective bargaining, not by our decision. Their income depends on their union's bargaining power vis-à-vis the employer. If any part of the meal break is considered compensable time (despite the exemption, which I discuss below, of bona fide meal breaks--and the plaintiffs don't argue that the meal breaks in this case are *not* bona fide), the employer can cut the total number of hours of work to avoid having to pay overtime, or indeed can eliminate meal breaks. For although Illinois law requires meal breaks for shifts of 7.5 hours or more, the breaks need not exceed 20 minutes, and the requirement does not apply to workers, such as the workers in this case, who are subject to a collective bargaining agreement. 820 ILCS 140/3. The

employer, if forced to compensate for time spent in doffing and donning sanitary gear during meal breaks, could reduce the wage to the minimum wage, or take other measures designed to make sure that the workers have no greater income than they now have, for that is the maximum income that their union have been able to extract in collective bargaining negotiations. Only class counsel would benefit from a judgment or settlement. And by the way, meal breaks are a common subject of collective bargaining (see Google references to "Collective Bargaining Over Meal Breaks"); the validity of those agreements could be placed in doubt by a reversal of the panel decision. As the appellees' response to the petition for rehearing points out, "it would be absurd to allow CBAs [collective bargaining agreements] to exclude donning and doffing time when arriving at and leaving the work site, but prohibit those *same* CBAs from doing the *same* thing as to the *same* activity by the *same* employees at the beginning and end of the lunch break" (emphases in original). The dissent does not respond to this point.

Instead it accuses the panel decision of rejecting the concept of the "continuous workday." It says that "Congress has spoken and decided what should or should not be subject to collective bargaining: those periods donning and doffing at the 'beginning or end of each' continuous workday are subject to collective bargaining; those periods during the continuous workday are not. 29 U.S.C. § 203(*o*). The majority's fracturing of the workday now calls into question the very existence of the 'continuous workday' doctrine, since there is nothing continuous about the workday as the majority de-

scribes it." The dissent cites two district court cases that accept the doctrine. Of course they accept the doctrine, as does the panel decision. It is announced in a Department of Labor regulation in force since 1947 and accepted as valid, 29 C.F.R. § 790.6(b); it is repeated in the Supreme Court's decision in *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29 (2005), and numerous other decisions besides the two district court cases cited by the dissent. But the dissent misses a vital point: the term "workday" means "*in general*, the period between the commencement and completion on the same workday of an employee's principal activity or activities." The phrase that I've italicized, which is from the regulation and is paraphrased by the Supreme Court as "generally" in *IBP, Inc. v. Alvarez, supra*, 546 U.S. at 29, allows for exceptions from the continuity requirement. "Workday" needn't *always* mean the *entire* interval between the worker's arrival at work at the beginning of the day and his departure for home at the end of the day. Suppose a family hires a nanny to come to its home at 7 a.m. and remain till 9 a.m., to get the kids ready for school; and to return at 3 p.m. and remain till 8 p.m. in order to take care of them after school and feed them and put them to bed. Her workday is not 13 hours (7 a.m. to 8 p.m.), but rather 7 hours (7 to 9 and 3 to 8). Similarly, the poultry workers in this case work an 8 hour day, not an 8½ hour day. The lunch break breaks up their workday.

The dissent takes a "plain language" approach to the workday regulation, but fails to note that "in general" is part of that plain language, and has to be given meaning. In recognizing an exception, the panel decision was not violating the regulation.

The workday issue is only one of three grounds of the panel decision. Another—and the most straightforward—is that bona fide meal breaks are excluded from work time. 29 C.F.R. § 785.19; *Sepulveda v. Allen Family Foods, Inc.*, *supra*, 591 F.3d at 217 n. 4 ("lastly, the employees seek compensation for the time they spend during their lunch breaks donning and doffing a few items, washing, and walking to and from the cafeteria. This time is non-compensable, however, because it is part of a bona fide meal period"). The regulation I just cited states that a meal break ceases to be "bona fide" when "an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating." The poultry workers in our case do not eat while working. It is true that section 203(*o*) makes no reference to lunch breaks, but the reason is that the Fair Labor Standards Act does not require lunch breaks, so naturally doesn't specify exclusion of clothes-changing time during such breaks.

So clear is this ground for rejecting the plaintiffs' claim that if we were to grant rehearing en banc and reverse, the district court would have no choice but to reinstate its judgment.

The third alternative ground for affirming the district court is what the panel decision called the "*de minimis*" character of the doffing and donning, a term for which the Supreme Court in the *Sandifer* opinion substituted "minimal" while affirming our decision, notwithstanding the disagreement over nomenclature—a trivial disagreement. I have difficulty understanding the dissent's discussion of the issue. The dissent states that in *Sandifer*

the employees argued that twelve items of clothing were donned and doffed and such time was compensable. The Supreme Court ultimately found that three of the items were not actually clothing. Rather than figure out which portion of the donning and doffing time was compensable and which was not, the Supreme Court wrote off the time putting on and taking off the non-clothing items so long as the entire period "*on the whole*" was fairly characterized as "time spent in changing clothes or washing" (emphasis in original). In other words, where there is an intermingling between clothes and nonclothes item[s] during the donning and doffing period, the court need not be a "time study professional[]" and determine which portion relates to clothing and which does not; so long as the period "on the whole" can be characterized as donning and doffing non-clothes, it is compensable. However, this does not change the Supreme Court's statement that the *entire* donning and doffing period cannot be written off as *de minimis* since, as the Court stated, 203(*o*) is all about such "trifles." Yet that is exactly what the majority does, writing off the entire period as *de minimis*. [Emphasis in original; citations omitted.]

I understand neither the reference to "trifles" in the Supreme Court's opinion nor the use made of the term in the dissent from our denial of rehearing en banc. Section 203(*o*) allowed the parties in *Sandifer* to exclude donning and doffing time from compensable time but only donning and doffing of clothing. The workers in *Sandifer*, who were steelworkers, were required to don and doff not only clothing but certain protective equipment, such as a helmet and gog-

gles. Such equipment is not clothing, and so the time taken in donning and doffing would be—one might have thought—compensable time. But because there were very few protective items in comparison to the amount of work clothes that the steelworkers were required to wear, the Court decided that the time required to don and doff the protective equipment could be ignored—a result consistent with what the panel ruled in the present case. Donning and doffing protective equipment just wasn't a big deal; in this case donning and doffing sanitary gear during the lunch break is likewise not a big deal.

A practical point important both in *Sandifer* and the present case, but ignored in the dissent, is that it is infeasible to determine the time it takes to doff and don, because every worker will don and doff at a different rate unless monitored by supervisors, which would be a cost borne ultimately by the workers. Such monitoring would also be obnoxious— imagine supervisors shouting "you have 20 seconds to finish putting on the last item of your sanitary gear!"

One point remains to be considered, as it figures not only in the petition for rehearing en banc and in the dissent from the denial of rehearing en banc but also in some of the online commentary on the panel decision. The petition denounces the experiment conducted by "unidentified members of the judiciary" (these villains are my law clerks and I), which it states violates due process and the Federal Rules of Civil Procedure. As the panel decision explains, the information produced by the experiment was not "evidence," was not "appellate factfinding," but was the fruits of curiosity regarding the appellants' implausible (in fact unbelievable) contention that it takes 15 minutes to don a few items of pro-

tective clothing. Although called "changing clothes," the donning and doffing by these poultry workers involve not changing clothes but just putting some items of protective clothing, like an apron and a hair net, on top of one's street clothes, and removing the same items. No way can that take 15 minutes.

We are required to affirm a grant of summary judgment when "no reasonable jury" would have credited the appellants' contentions. *Nunez v. BNSF Railway Co.*, 730 F.3d 681, 685 (7th Cir. 2013). The panel considered this the situation with regard to the plaintiff's contentions about the time required for donning and doffing. The plaintiffs must agree, because they change their allegations in the petition for rehearing, arguing for the first time that they have to store the protective clothing for reuse, travel to a sink, and wait in line to wash. In the district court the only act they claimed took 10 to 15 minutes was putting on the sanitary gear (which they call, misleadingly in light of *Sandifer*, "protective equipment'). "It typically took [they alleged in a Statement of Additional Fact] ten (10) to fifteen (15) minutes to properly don the protective equipment." Not taking off *and* putting on—just putting on. As the lead plaintiff, Rochell Mitchel, stated in an affidavit attached to her opposition to the defendants' motion for summary judgment, "once I receive the PPE ['personal protective equipment'—what I've been talking about] it takes approximately 10-15 minutes to put all of the gear on properly" ("put on," not "put on and take off"). The complaint makes no mention of "instrument washing" or "walking time" and the district judge noted that the first mention of such claims was in a footnote in the plaintiffs' response to summary judgment—and was thus forfeited (a critical point overlooked by the dissent). Apparently the

plaintiffs accepted his ruling, because they didn't challenge it in their appeal briefs. Now they concede (maybe without realizing this) that no, those acts alone don't add up to 10 to 15 minutes. It's those acts plus additional ones that do.

The dissent quotes plaintiff Mitchell's claim that it takes her "5–6 minutes" to walk to lunch and doff her gear. That statement is doubly problematic: there is no claim that walking time needs to be compensated, and Mitchell does not say how much of the alleged 5 to 6 minutes is spent walking. She says "it took … (presumably) the same 5–6 minutes to don the clothing during the lunch break." But remember that her affidavit stated that it took her 10–15 minutes to put on the gear at the start of the day. She does not explain why it should take so much less time during the lunch break. Maybe a sympathetic jury would brush aside these contractions, but no *reasonable* jury could believe her testimony, and that is the standard.

The district judge based his summary judgment decision on the factual claims made by the parties, including the obviously fantastic claim (now implicitly conceded to be false) that donning alone takes 15 minutes. Further confusing the issue, the petition for rehearing states that doffing and donning "indisputably consumes *between* … two to over 15 minutes" (emphasis added)—a concession that underscores the infeasibility of actually measuring these times for purposes of determining how much additional wages the workers are entitled to under the petitioners' theory. Will some workers get 2 minutes of overtime pay a day and others 20 (remember "*over* 15 minutes")? Who will keep track of these times? How will dawdling be monitored and prevented?

As the appellees point out, the statement in the petition for rehearing that "over 50 percent of the entire meal break" is spent in changing clothes and washing is not only ridiculous and unsupported by any citations to the record, but if true would mean that the meal break was not bona fide. In that event the employees would be entitled to compensation for the entire break, not just the time taken in changing and washing—and that is not argued. Mitchell attested that it took her only five or six minutes to walk from her work station to the changing area and remove her protective clothing. And walking and washing time are not even part of the appellants' claim.

I am puzzled finally by the dissent's remark that "how long it took to don and doff was an issue of fact that should have been decided by a jury." My puzzle is: how is such a fact to be determined by a jury? Suppose one worker testifies (as per Mitchell's affidavit) that it takes 10 to 15 minutes to don and doff, and another (one aligned with management, for remember that the exclusion of donning and doffing time from compensable time was by agreement between union and management) testifies it takes 2 minutes. How is a jury to decide between them? Probably the most accurate way to resolve the dispute would be, on the model of the criticized experiment by court staff, to videotape workers doffing and donning. The problem is that the workers aligned with the plaintiffs would dawdle, and the workers aligned with management would practice doffing and donning until they broke the speed record. What would the jury do? This is somewhat to the side of the issue of the case, but illustrates the important point that determining facts in a litigation can be devilishly difficult if one thinks accuracy important.