WILLIAMS, Circuit Judge,
with whom WOOD, Chief Judge, and ROVNER and HAMILTON, Circuit Judges join, dissenting from denial of rehearing en banc.
This is an important case with far-reaching implications for, among others, workers who are being paid minimum wage or close to it. As set forth in Chief Judge Wood’s well-written dissent and also in the petition for rehearing, this case should have been heard en banc because the majority opinion calls into question the application of the “continuous workday” doctrine of the Fair Labor Standards Act (“FLSA”), erroneously applies de minimis analysis to the FLSA in contravention of Supreme Court precedent, and improperly applies the summary judgment standard under Federal Rule of Civil Procedure 56.
Under the FLSA, an employer and employee may collectively bargain to make non-compensable “any time spent in changing clothes or washing at the beginning or end of each workday ...” 29 U.S.C. § 203(o). Congress adopted section 203(o) with full knowledge of the then-existing Department of Labor definition of “workday” known as the “continuous workday” rule or doctrine — which states that the workday is, “in general, the period between the commencement and completion on the same workday of an employee’s principal activity or activities.” *696 29 C.F.R. § 790.6(b); see Sandifer v. U.S. Steel Corp., — U.S.-, 134 S.Ct. 870, 875-76, 187 L.Ed.2d 729 (2014) (describing history of FLSA). Applying reasoning that I believe contravenes the plain language of both the FLSA and the Department of Labor’s definition, the majority finds that the employees of the chicken processing plant work not one eight-hour day, but two four-hour workdays broken up by a thirty-minute lunch break. Mitchell v. JCG Indus., Inc., 745 F.3d 837, 840 (7th Cir.2014). Under the majority’s approach, any time spent doffing clothes during the start of the lunch break is actually at the end of the first four-hour workday, and any time donning clothes at the end of the lunch break is actually at the beginning of the employees’ second four-hour workday, and so the donning and doffing during the mid-day lunch break is subject to the collective bargaining agreement under § 203(o). Id. The day can be broken up that way, the majority states, because the employees have an unpaid lunch break and that non-compensable period must act as a break between the first workday and the second workday. Id. The Department of Labor’s “general” definition of a continuous workday does not apply here, the majority continues, because this case presents a “compelling reason to recognize an exception” to the continuous workday doctrine, namely that there are actually two four-hour workdays. Id.
Setting aside the specific facts of this case, I have serious concerns about what effect the majority’s analysis will have on the “continuous workday” doctrine going forward. Under the doctrine, workers must be compensated for time they spend doing what might otherwise be non-com-pensable activities if those activities occur during the “period between commencement and completion on the same workday of an employee’s principal activity or activities,” subject to FLSA carve outs. IBP, Inc. v. Alvarez, 546 U.S. 21, 29, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005) (quoting 29 C.F.R. § 790.6(b)). Normally, an employee who commences her first principal activity at 8 a.m., takes a half-hour lunch break from 12-12:30, and completes her principal activity at 4:30 p.m., has worked one continuous workday (8 a.m. — 4:30 p.m.). Kellar v. Summit Seating Inc., 664 F.3d 169, 174 (7th Cir.2011) (noting “[w]ork activities that Kellar performed after [her first integral and indispensable work activities] would be covered by the ‘continuous workday rule’ ” and quoting 29 C.F.R. § 790.6); see also Alvarez v. IBP, Inc., 339 F.3d 894, 907 (9th Cir.2003) (noting the workday is “continuous, not the sum of discrete periods”), aff'd by IBP, Inc., 546 U.S. at 29, 126 S.Ct. 514. She must be compensated for all of that period, except for the bona fide lunch break. 29 C.F.R. § 785.19 (excluding bona fide lunch breaks from “worktime”). However, based on the majority’s analysis, that same employee now has worked two continuous workdays (8 a.m. — 12 p.m. and 12:30 p.m.- — 4:30 p.m.), twice commenced her principal activities, and twice completed her principal activities, all between sunrise and sunset. Mitchell, 745 F.3d at 840. In other words, whereas before the majority’s opinion the employee only had one “beginning [and] end” of the workday that is subject to collective bargaining, now that same employee has two. 29 C.F.R. § 790.6(b). I have great concern that the majority’s reasoning will spell the end of the “continuous workday” doctrine, which courts around this circuit have relied upon in deciding cases, and will allow employers to negotiate away otherwise compensable time. See, e.g., Harris v. Reliable Reports Inc., No. 13-cv-210, 2014 WL 931070, at *6, 2014 U.S. Dist. LEXIS 31223, at *13-14 (N.D.Ind. March 10, 2014) (denying motion to dismiss based on continuous work *697 day doctrine); Espenscheid v. DirectSat USA LLC, No. 09-cv-625, 2011 WL 10069108, at *32, 2011 U.S. Dist. LEXIS 154706, at *68-70 (W.D. Wis. April 11, 2011) (denying summary judgment on continuous workday FLSA claim). Congress has spoken and decided what should or should not be subject to collective bargaining: those periods donning and doffing at the “beginning or end of each” continuous workday are subject to collective bargaining; those periods during the continuous workday are not. 29 U.S.C. § 203(o). The majority’s fracturing of the workday now calls into question the very existence of the “continuous workday” doctrine, since there is nothing continuous about the workday as the majority describes it. Indeed, this dubious rationale has already been questioned by one federal court. Abadeer v. Tyson Foods, Inc., — F.Supp.2d-, 2014 WL 1404836, at *13 (M.D. Tenn. April 10, 2014) (“Departing radically from the conventional understanding of ‘workday’ — in effect since 1947 and approved by the Supreme Court in 2005 — Mitchell found that the period before a meal break was the end of one ‘workday’ and the period after a meal break was the start of another.”); see also Castaneda v. JBS USA LLC, No. 08-cv-01833, 2014 WL 1796707, at *3, 2014 U.S. Dist. LEXIS 62390, *9-10 (D.Colo. May 6, 2014) (rejecting idea of “two four-hour work days” and therefore not applying 203(o)).
Moreover, by carving out an “exception” to the “general” definition propounded by the Department of Labor, the majority has created an exception to what had previously been the “continuous workday” doctrine’s rule, but does nothing to explain when this exception should be applied and when it should not. Mitchell, 745 F.3d at 840. Going forward, district courts, employers and employees are likely to be confused as to when a day is continuous and when it is not. When is a seemingly eight-hour workday actually two four-hour workdays, or four two-hour workdays, or eight one-hour workdays? What makes this case the “exception” to the “general” definition, but another case not the “exception”? This “exception” is likely to create confusion in both the administration of law-since district courts are now faced with the Supreme Court precedent adopting the “continuous workday” doctrine, IBP, Inc., 546 U.S. at 29, 126 S.Ct. 514, and precedent by our court rejecting its application — and the collective bargaining process. See, e.g., Abadeer, — F.Supp.2d at-n. 4, 2014 WL 1404836, at *13 n. 4 (discussing Mitchell and stating “[t]his newly discovered ‘exception,’ then, presumably applies to all unionized shift work that includes a meal break, which is to say nearly all unionized shift work.”). Since the application of the “continuous workday” doctrine involves “a question of exceptional importance” and the majority’s decision calls into question the “uniformity of the court’s decisions” — specifically when the “exception” should apply — I believe this case should have been heard en banc. Fed. R.App. P. 35(a).
Second, the majority holds that its conclusion is supported, in the alternative, by the fact that such donning and doffing is de minimis and therefore non-eompensable. Mitchell, 745 F.3d at 841-843. Yet, as Chief Judge Wood stated in her dissent, as Appellant’s petition for rehearing points out, and as the majority itself notes, the Supreme Court has explicitly rejected the idea that donning and doffing “on the whole” can be subject to a de minimis analysis. As the Supreme Court stated, 203(o) is “all about trifles — the relatively insignificant periods of time in which employees wash up and put on various items of clothing needed for their jobs.” Sandifer, 134 S.Ct. at 880 (emphasis in original). *698 The majority here accepts this statement, but nonetheless applies the de minimis doctrine because it believes the Supreme Court tacitly approved such application. Mitchell, 745 F.3d at 841-843. However, this is a misreading of Sandifer. In that case, the employees argued that twelve items of clothing were donned and doffed and such time was compensable. Sandifer, 134 S.Ct. at 879. The Supreme Court ultimately found that three of the items were not actually clothing. Id. at 880. Rather than figure out which portion of the donning and doffing time was compen-sable and which was not, the Supreme Court wrote off the time putting on and taking off the non-clothing items so long as the entire period “on the whole ” was “fairly characterized as ‘time spent in changing clothes or washing.’ ” Id. at 881 (emphasis in original) (quoting § 203(o)). In other words, where there is an intermingling between clothes and non-clothes item during the donning and doffing period, the court need not be a “time study profession-alt ]” and determine which portion relates to clothing and which does not; so long as the period “on the whole” can be characterized as donning and doffing non-clothes, it is compensable. Id. at 880. However, this does not change the Supreme Court’s statement that the entire donning and doffing period cannot be written off as de minimis since, as the Court stated, 203(o) is all about such “trifles.” Id. Yet that is exactly what the majority does, writing off the entire period as de minimis. Mitchell, 745 F.3d at 843. I am concerned that a district court faced with a donning and doffing case will not know whether it should apply the de minimis standard and follow the majority’s opinion, or whether it should follow the Supreme Court’s precedent. This conflicting precedent creates confusion and will disrupt the “uniformity of the court’s decisions,” and for that reason, I believe this case should have been heard en banc. Fed. R.App. P. 35(a).
Finally, I believe the majority misapplied the Federal Rule of Civil Procedure 56 summary judgment standard and did not view the evidence in the light most favorable to the nonmoving party. See Chaib v. Indiana, 744 F.3d 974, 981 (7th Cir.2014). Rather, the majority discounted an affidavit presented by Appellant that it took her 5-6 minutes to doff (and presumably) the same 5-6 minutes to don the clothing during the lunch break. See November 1, 2012 Affidavit of Rochell Mitchell. The majority found the employees’ estimate to be “inconceivable.” Mitchell, 745 F.3d at 841. Taken in the light most favorable to the employees, those 10-12 minutes daily add up to 50-60 minutes per week. Even if de minimis analysis were appropriate here, that is not de minimis time. By explicitly rejecting Appellant’s affidavit and accepting the employer’s time estimation (and confirming that with a court staff “experiment”), the majority ignored the evidence in the light most favorable to the employees and therefore did not conduct the proper Rule 56 analysis. In the light most favorable to Appellant, how long it took to don and doff was an issue of fact that should have been decided by a jury.
For the foregoing reasons, I dissent from denial of rehearing en banc.